# Statutory Authority to Contract With the
# Private Sector for Secure Facilities

The Federal Bureau of Prisons has statutory authority to contract with the private sector for secure facilities.

March 25, 1992

## MEMORANDUM OPINION FOR THE DIRECTOR
## FEDERAL BUREAU OF PRISONS

This memorandum responds to your request for our opinion whether the Federal Bureau of Prisons ("BOP") has statutory authority to contract with the private sector for secure facilities.[1] The General Accounting Office ("GAO") has concluded that BOP lacks such authority;[2] BOP has taken the opposite view.[3] For the reasons explained below, we conclude that BOP has statutory authority to contract with the private sector for secure facilities.

## I.

BOP was established in the Department of Justice in 1930 to provide a central federal organization responsible for the care and treatment of federal prisoners. H.R. Rep. No. 106, 71st Cong., 2d Sess. 1 (1930). BOP has the authority and responsibility under 18 U.S.C. § 3621(b) to "designate the place of . . . imprisonment" for prisoners who have been sentenced to a term of imprisonment under relevant federal statutes. BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau [of Prisons], whether maintained by the Federal Government or otherwise." 18 U.S.C. § 3621(b).[4]

---

[1] See Memorandum for J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, from J. Michael Quinlan, Director, Federal Bureau of Prisons (Apr. 26, 1991) ("Opinion Request").

[2] GAO, Private Prisons, Cost Savings and BOP's Statutory Authority Need to be Resolved: Report to the Chairman, Subcomm. on Regulation, Business Opportunities and Energy, House Comm. on Small Business (Feb. 1991) ("GAO Report").

[3] See Opinion Request at 1; Memorandum for J. Michael Quinlan, Director, from Clair A. Cripe, General Counsel, Federal Bureau of Prisons at 4 (Oct. 14, 1988) ("1988 Memorandum"); Memorandum for Norman A. Carlson, Director, from Clair A. Cripe, General Counsel, Federal Bureau of Prisons (June 10, 1983), reprinted in Privatization of Corrections: Hearings Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary, 99th Cong., 1st & 2d Sess. 150 (1985-86) ("Privatization Hearing").

[4] Section 3621(b) is applicable to those convicted of offenses committed on or after November 1, 1987.

Continued

BOP has consistently taken the position that the language of section 3621(b) — especially as it refers to facilities "whether maintained by the Federal Government or otherwise" — allows it to place federal prisoners in facilities operated by the private sector as well as those run by federal, state, or local authorities. *See* Opinion Request at 1; 1988 Memorandum at 4; Privatization Hearing at 150. It has relied for this conclusion on the plain language of the statute and on general principles of federal procurement law under which executive agencies may enter into contracts with the private sector. *See* Opinion Request at 1; 1988 Memorandum at 2-3; Privatization Hearing at 149-50; *Bureau of Prisons and the U.S. Parole Commission: Oversight Hearing Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Comm. on the Judiciary*, 99th Cong., 1st Sess. 16-17 (1985) ("1985 Hearing"); *see also Privatization Toward More Effective Government: Report of the President's Commission on Privatization* 147 (Mar. 1988) ("President's Commission").[5]

GAO, however, has concluded that, at least as to secure facilities, the statute's reference to facilities "maintained by the Federal Government or otherwise" includes only federal, state, and local facilities, but not facilities operated by the private sector. *See* GAO Report at 45-50. GAO argues that there is no evidence that Congress contemplated private incarceration of federal prisoners except in limited circumstances involving residential community treatment centers such as halfway houses. *Id.* at 48-49.[6] GAO contends that the authority in section 3621(b) to place prisoners in any facility "whether maintained by the Federal Government or otherwise" is

---

[4](....continued)

*See* 18 U.S.C. § 3621 note. It is based on former 18 U.S.C. § 4082(b), *reprinted in* 18 U.S.C. § 4082 note, which governs as to offenses committed before November 1, 1987. Former section 4082(b) provided in part that "[t]he Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise." References to section 4082 in this memorandum should be understood to refer to former section 4082. Our analysis in this memorandum applies to the authority to designate the place of incarceration under both section 3621(b) and former section 4082(b). References in this memorandum to the history of section 3621(b) should be understood to include its predecessor statutes.

[5] One writer has claimed that BOP's former director, Norman A. Carlson, testified to the contrary in a 1985 Hearing. *See* Ira P. Robbins, *The Legal Dimensions of Private Incarceration* 399 n.940 (1988) ("Robbins"). However, Robbins quotes only a portion of Carlson's remarks. In context, it is plain that Carlson stated that he was unsure, without the benefit of advice of counsel, whether BOP could privatize "one of the *existing* 45 institutions." 1985 Hearing at 17 (emphasis added). He stated unequivocally his view that BOP has "statutory authority in [its] enabling legislation in title 18 to contract with State, local or private agencies for the care and custody of offenders. I think the enabling legislation gives us that authority." *Id.* at 16. Carlson further clarified his position in a 1986 hearing:

> Although I raised some question [regarding the legal authority to contract for an entire facility] when I testified before this subcommittee in March of 1985, our General Counsel advises me that we currently have the necessary authority to contract for the management of an entire facility under 18 U.S.C. § 4082. This law allows the Attorney General to designate as a place of confinement "any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise."

Privatization Hearing at 141.

[6] A residential community treatment center is a pre-release facility to which a prisoner may be transferred in order to be assisted in becoming re-established in the community. S. Rep. No. 613, 89th Cong., 1st Sess. 7 (1965) ("S. Rep. No. 613"). Such facilities are contrasted with secure facilities used to house prisoners who "remain a distinct threat to the community." *Id.* at 7-8.

circumscribed by 18 U.S.C. § 4002 (authorizing the Attorney General to contract for the incarceration of federal prisoners with states and localities) and 18 U.S.C. § 4003 (permitting the Attorney General to cause new federal facilities to be erected), which in GAO's view outline the only two options available to BOP for obtaining incarceration facilities. GAO Report at 46-48.[7]

## II.

We begin our analysis with the language of the statute. As the Supreme Court has recently said, in construing a statute the one "cardinal canon before all others," is that we must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: '[the] inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

The plain language of section 3621(b) gives BOP open-ended authority to place federal prisoners in "any available penal or correctional facility" that meets minimum standards of health and habitability without regard to what entity operates the prison. As if to emphasize the breadth of BOP's authority to use "any available facility," Congress expressly noted that such facilities could be those "maintained by the Federal Government or otherwise." The words "or otherwise" are not qualified or defined. They are most obviously read to include (as the statute has already described) any penal or correctional facility — without regard to whether it is maintained by a state, local, or private entity — as long as it meets "minimum standards of health and habitability established by the Bureau." In short, there is nothing in the language of section 3621(b) that limits BOP's placement authority to those facilities operated by the federal government, states, or localities. Based on the well-recognized canon of statutory construction referred to above, we believe that the plain language of section 3621(b) is dispositive as to BOP's authority to place prisoners in facilities operated by the private sector.

Although GAO concedes that the plain language of section 3621(b) does not limit BOP's choice of prison operators, GAO Report at 48, GAO asserts that section 3621(b)'s legislative history establishes that Congress did not authorize placing federal prisoners in private secure facilities such as are at issue here. It contends that

---

[7] Section 4002 of title 18 provides in part:
  For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Attorney General may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

Section 4003 provides that if the authorities of a state, territory, or political subdivision thereof are unable or unwilling to enter into such contracts or "if there are no suitable or sufficient facilities available at reasonable cost, the Attorney General may select a site . . . and cause [an appropriate facility] to be erected "

> [n]othing in the legislative history of this provision suggests
> that Congress ever contemplated having private parties oper-
> ate adult secure facilities. Rather, it appears that Congress'
> intention in enacting the provision concerning places of con-
> finement was simply to clarify that the Attorney General would
> have the power to choose the places prisoners would be con-
> fined, which at that time were limited to federal or state and
> local institutions.

GAO Report at 48.

In light of the plain language of section 3621(b), we think GAO's conclu-
sion that BOP lacks the authority to designate private secure facilities --
based on the *absence* of comment on that issue in the legislative record -- is
an incorrect reading of the statute.[8] Moreover, even if we were to rely on
the legislative history of section 3621(b) to determine BOP's authority to
place prisoners in privately operated facilities, we find nothing in the legis-
lative history of section 3621(b) to indicate that Congress intended to preclude
the use of such facilities to incarcerate federal prisoners. The language now
contained in section 3621(b) originated in the Act of May 14, 1930, Pub. L.
No. 71-218, 46 Stat. 325 ("1930 Act"), and was adopted to resolve an ambi-
guity as to who had the power to designate the place of confinement of
federal prisoners. S. Rep. No. 533, 71st Cong., 2d Sess. 2 (1930) ("S. Rep.
No. 533") (statement of the Attorney General). It authorized the Attorney
General to "designate any available, suitable, and appropriate institutions,
whether maintained by the Federal Government or otherwise."[9] The lan-
guage enacted in 1930 has remained substantially unchanged through its
present codification in 18 U.S.C. § 3621(b).[10] During the various reenact-
ments of the provision, there was never any indication that the power to
designate the place of confinement was limited to designation of federal,
state, or local facilities. *See, e.g.*, S. Rep. No. 225, 98th Cong., 1st Sess. 141

---

[8] We note that while GAO reports are often persuasive in resolving legal issues, they, like opinions of
the Comptroller General, are not binding on the executive branch. *See* Memorandum for Donald B.
Ayer, Deputy Attorney General, from J. Michael Luttig, Principal Deputy Assistant Attorney General,
Office of Legal Counsel at 8 (Dec. 18, 1989) ("This Office has never regarded the legal opinions of the
Comptroller General as binding upon the Executive."); *Reimbursement for Detail of Judge Advocate
General Corps Personnel to a United States Attorney's Office*, 13 Op. O.L.C. 188, 189 n.2 (1989)
("The Comptroller General is an officer of the legislative branch, *see Bowsher v. Synar*, 478 U.S. 714,
727-32 (1986), and historically, the executive branch has not considered itself bound by the Comptrol-
ler General's legal opinions if they conflict with the legal opinions of the Attorney General and the
Office of Legal Counsel.").

[9] This language, contained in section 7 of the 1930 Act, was originally codified at 18 U.S.C. § 753f, *see*
18 U.S.C. § 4082 note, and was later reenacted in modified form and codified at former 18 U.S.C. §
4082(b). *See supra* note 4.

[10] Former section 4082(b) authorized the Attorney General to designate the place of incarceration for
federal prisoners. Section 3621(b) gives that authority to BOP, a component of the Justice Department.
The change was not intended to affect the authority with regard to place of confinement, but rather only
to simplify the administration of the prison system. S. Rep. No. 225, 98th Cong., 1st Sess. 141 (1983).

(1983) ("The designated penal or correctional facility need not be . . . maintained by the Federal Government.").

On the contrary, there is evidence in the legislative history of section 3621(b) that at least after a 1965 amendment Congress specifically anticipated that BOP would designate privately operated facilities as places of incarceration. In 1965 Congress amended the designation provision to allow designation of a "facility" as well as an "institution." Act of Sept. 10, 1965, Pub. L. No. 89-176, 79 Stat. 674 (former § 4082(b), *reprinted in* 18 U.S.C. § 4082 note). The word "facility" was defined to "include a residential community treatment center." *Id.* at 675 (former § 4082(g), *reprinted in* 18 U.S.C. § 4082 note).[11] The legislative history of former section 4082(g) indicates that by enacting that definition Congress intended that "facility" would include community treatment centers such as those already being used to place juvenile offenders. *See* S. Rep. No. 613 at 3-4. As GAO concedes, GAO Report at 23, at least one of those juvenile facilities was being operated by contract with a nongovernmental entity:

> The residential community treatment centers, to which the bill authorizes the Attorney General to commit and transfer prisoners, are similar to the so-called halfway houses now operated by the Department of Justice for juvenile and youthful offenders. . . .
>
> . . . The halfway houses are operated under different plans. . . .
> *The New York City center is operated under contract by Springfield University.*

S. Rep. No. 613 at 3-4 (emphasis added). According to the Senate Report, Congress envisioned that "under the bill's authority to use community centers for older types of prisoners *a similar variety of organizational plans will be adopted."* *Id.* at 4 (emphasis added).

Accordingly, for many years BOP has, "with the knowledge of Congress," contracted "for the placement of lower security inmates in private facilities, particularly contract Community Treatment Centers." 1985 Hearing at 22-23 (Testimony of Norman A. Carlson, Director, BOP). *See also id.* at 16-17 ("Today we have . . . nearly 2,500 [federal] inmates who are in halfway houses. . . . We contract with State, local and private agencies for this

---

[11] The definition of "facility" in former section 4082(g) did not *limit* application of the term to residential community treatment centers. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.07, at 152 (3d ed. 1992 rev.) ("Sutherland") ("[T]he word 'includes' . . . conveys the conclusion that there are other items includable, though not specifically enumerated."). In any event, Congress deleted the definition of "facility" when it substantially reenacted section 4082(b) in section 3621(b). Thus, particularly as it appears in section 3621(b), "facility" is not limited to residential community treatment centers. We reject the suggestion to the contrary in Robbins at 412-13.

service."). As Director Carlson testified in 1986, "[s]ince 1981, the Bureau of Prisons has relied solely on the private sector to provide prerelease housing through its community treatment center programs." Privatization Hearing at 132. In 1986, BOP "contract[ed] with 330 Community Treatment Centers ["CTCs"], 234 of which [were] privately run. Over 3,000 Federal inmates [were] in these CTCs. . . . In 1984, approximately 80 percent of offenders who were serving sentences of over six months and who were released to the community were released through contract CTCs." *Id.* at 168 (BOP staff position paper).

GAO apparently does not dispute BOP's authority to enter into private contracts for residential community facilities. *See generally* GAO Report at 48-49; *see also* Robbins at 412. GAO does not believe, however, that the text and legislative history of the 1965 amendment support the conclusion that Congress anticipated use of private *secure* facilities. It reasons that the Attorney General had specific statutory authority to contract for juvenile residential community treatment centers. *See* 18 U.S.C. § 5040.[12] Thus, in GAO's view, the 1965 amendment does not demonstrate Congress's view that the Attorney General already had authority to contract for private incarceration facilities, and, at most, it provided that authority for adult residential community facilities. *See also* Robbins at 400 ("[T]he meaning of the phrase 'or otherwise' has changed, but only to the rather limited extent of permitting [BOP] to contract with private corporations for the confinement of federal prisoners in certain special facilities, such as residential community-treatment centers.").[13]

GAO's response misses the point and ignores the statute's plain language. Former section 4082(b), as amended in 1965, gave the Attorney General the

---

[12] Section 5040 provides in part that "[t]he Attorney General may contract with any public or private agency or individual and such community-based facilities as halfway houses and foster homes for the . . . custody and care of juveniles in his custody." Provisions authorizing such private contracts have been in effect since 1938. *See* Juvenile Justice and Delinquency Act of 1974, Pub. L. No. 93-415, § 510, 88 Stat. 1109, 1138 (1974); Act of June 16, 1938, ch. 486, § 6, 52 Stat. 764, 766.

[13] Robbins contends that because the precursors of section 3621(b) and sections 4002 and 4003 were enacted together, *see* 1930 Act §§ 3, 4, & 7, the "or otherwise" language of section 3621(b) can only be interpreted as referring to institutions that were authorized by the precursors of sections 4002 and 4003, *i.e.*, federal, state, local, or other public institutions. Robbins at 405-06. He then reasons that the 1965 amendment only broadened the authority now contained in section 3621(b) to include the power to contract for residential community treatment centers:

> Thus, although section 4082(b) was expanded to allow the Attorney General to confine adult federal prisoners in privately run facilities, Congress contemplated such action only with respect to qualified pre-release prisoners in residential community-treatment centers. Congress did not intend the amendment to be a broad grant of authority to place adult federal prisoners in all types of privately run facilities.

*Id.* at 412-13 (footnote omitted).

Robbins places great weight on the fact that the precursors of section 3621(b) and sections 4002 and 4003 were initially enacted in the same public law. *See id.* at 405. However, these sections subsequently have been reenacted, amended, and recodified in separate locations in the United States Code. Section 3621(b) is codified in subchapter C (Imprisonment) of chapter 229 of title 18, entitled "Postsentence Administration." Sections 4002 and 4003 are codified in chapter 301 of title 18, entitled "General Provisions," which includes a number of loosely-related provisions. *See, e.g.*, § 4001 (Limitation on detention; control of prisons); § 4004 (Oaths and acknowledgments); § 4005 (Medical relief; expenses). The mere fact that these sections were initially enacted together, without more, does not require that they should be construed in a like manner.

70

authority to place a federal prisoner in a "facility" including, but not limited to, a residential community treatment center. The Senate Report indicates that Congress expected the Attorney General to use the same kinds of arrangements for the adult residential facilities contemplated by the 1965 amendment as already existed in connection with similar facilities for juvenile offenders, at least one of which involved a contract with a nongovernmental entity. S. Rep. No. 613 at 3-4 (under the "authority to use community centers for older types of prisoners a similar variety of organizational plans will be adopted"). Yet Congress apparently saw no need to provide additional authority beyond that inherent in the designation provision itself to allow the Attorney General to enter into contracts with the private sector for adult facilities. This indicates that Congress believed the Attorney General had the authority under former section 4082(b) to enter into such contracts.

There is, moreover, no statutory basis in section 3621(b) for distinguishing between residential community facilities and secure facilities. Because the plain language of section 3621(b) allows BOP to designate "any available penal or correctional facility," we are unwilling to find a limitation on that designation authority based on legislative history. Moreover, the subsequent deletion of the definition of "facility" further undermines the argument that Congress intended to distinguish between residential community facilities and other kinds of facilities. *See supra* note 11.[14]

## III.

GAO also contends that the language of section 3621(b) can only be understood in conjunction with 18 U.S.C. § 4002, which explicitly authorizes the Attorney General to contract with states and localities for the "imprisonment, subsistence, care, and proper employment" of federal prisoners, and 18 U.S.C. § 4003, which permits the Attorney General to cause appropriate facilities to be erected. *See supra* note 7. These statutes do not mention contracts with the private sector. GAO argues that sections 4002 and 4003 detail the only two courses of action the Attorney General and, by inference, BOP may take to provide incarceration facilities, and thus provide a statutory limit on the otherwise broad language of section 3621(b). GAO Report at 47-48 & n.8. GAO invokes the maxim of *expressio unius est exclusio alterius*[15] to conclude that because Congress addressed "two courses of action the federal government may use in order to obtain incarceration facilities" in

---

[14] We also note that GAO's construction of the 1965 amendment would mean that the phrase "maintained by the federal government or otherwise" would have two different meanings at the same time: it would mean federal, state, or local government "institutions," but federal, state, local, *or private* "facilities."

[15] *Expressio unius est exclusio alterius* means "the expression of one thing is the exclusion of another." *Black's Law Dictionary* 581 (6th ed. 1990). Under the maxim of *expressio unius*, where a "form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions." Sutherland § 47.23, at 216 (footnotes omitted).

some detail, the "clear inference is that Congress intended to preclude any arrangement not expressly authorized" by those sections. *Id.* at 47.

As an initial matter, we question whether application of the *expressio unius* maxim is appropriate in these circumstances. The statutes at issue here are both affirmative grants of authority. The premise of the maxim — that the expression of one thing is the exclusion of another — simply does not apply where the expressions of limitation are set up against an additional affirmative grant of authority. The maxim, it seems to us, is more properly reserved for those circumstances in which the issue is whether the enumeration of items is exhaustive of the authority provided in the absence of other grants of authority. It is quite something else to apply the maxim, as GAO would have us do, to conclude that limitations on a particular grant of authority should also limit a separate grant of authority.

We also note that the maxim of *expressio unius* is not a rule of substantive law, but a rule of statutory construction based on "'logic and common sense.'" Sutherland § 47.24, at 228 (quoting Herbert Broom, *A Selection of Legal Maxims* 453 (10th ed. 1939)). It embodies a "presumption that . . . Congress intended to deny all powers not expressly enumerated" and it "should be invoked only when other aids to interpretation suggest that the language at issue was meant to be exclusive." *Bailey v. Federal Intermediate Credit Bank*, 788 F.2d 498, 500 (8th Cir.) *cert. denied*, 479 U.S. 915 (1986). Application of the presumption generally occurs where "'there [is] some evidence the legislature intended [the presumption's] . . . application lest it [should] prevail as a rule of construction despite the reason for and the spirit of the enactment.'" Sutherland § 47.25, at 234 (alteration in original) (quoting *Columbia Hospital Ass'n. v. City of Milwaukee*, 151 N.W.2d 750, 754 (1967)). *See also National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) (*expressio unius* maxim "must yield to clear contrary evidence of legislative intent.").[16]

Here, the presumption suggested by the *expressio unius* maxim is undermined by the fact that nothing in the text or legislative history of sections 4002 and 4003 confirms the negative inference that Congress intended by the grants of contracting authority to limit BOP's unqualified section 3621(b) power to designate the place of incarceration of federal prisoners. Sections 4002 and 4003, by their terms, are permissive rather than exclusive. Section 4002 provides that the Attorney General "*may* contract . . . with the proper authorities of any State, Territory, or political subdivision thereof" in order to "provid[e] suitable quarters for the safekeeping, care, and subsistence" of

---

[16] This Office has noted on numerous occasions that "[i]n attempting to assess congressional intent, the *expressio unius* maxim may serve as a guide to that intent, but it is inconclusive. Other factors, including . . . the nature of the legislation, and the legislative history, must also be considered in the effort to discern congressional intent." *Applicability of Certain Cross-Cutting Statutes to Block Grants Under the Omnibus Budget Reconciliation Act of 1981*, 6 Op. O.L.C. 83, 105 (1982)(footnote omitted). *See also Paperwork Reduction Act of 1980*, 6 Op. O.L.C. 388, 407 (1982) ("The application of the [*expressio unius*] maxim is more persuasive when the language of the statute, its legislative history, and other factors point to the same result.").

federal prisoners. *Id.* (emphasis added). Alternatively, under section 4003 the Attorney General "*may . . . cause to be erected*" a suitable federal facility. *Id.* (emphasis added). Nothing in these sections or anywhere else in BOP's enabling legislation could be said to prohibit contracting with the private sector or to establish statutory requirements that would be at variance with such private contracts.

The legislative history of sections 4002 and 4003 indicates that these provisions were enacted specifically to address particular problems in connection with the incarceration of federal prisoners in state and local facilities. Sections 4002 and 4003 were enacted in response to a shortage of prison space for federal prisoners and the lack of a central administrative organization to oversee the disposition of such prisoners. *See* S. Rep. No. 533 at 2 (statement of the Attorney General). Although the federal government was already relying heavily on state and local facilities for the incarceration of federal prisoners, it was "powerless to remedy the deplorable conditions of filth, contamination, and idleness which [were] present in most of the antiquated jails of the country" and was "obliged to pay the States the rates they charge[d] for boarding Federal prisoners, even though they may be exorbitant." *Id.*

In response, section 3 of the 1930 Act, the precursor to section 4002, placed specific limitations and requirements on contracts with states and local governments. Section 4 of the 1930 Act, now substantially contained in section 4003, was enacted because emergency conditions and the large number of federal prisoners in certain districts made it desirable for the Department of Justice to have the authority to provide prisons of its own. *See* S. Rep. No. 533 at 3. Because these provisions were enacted to address specific circumstances involving the incarceration of federal prisoners in federal, state, and local facilities, Congress's failure to address contracts with the private sector is not surprising, and does not reflect an intention to prohibit such contracts.[17]

The *expressio unius* argument is further undermined because BOP does not, as a general matter of federal contracting law, need specific statutory authorization to contract with the private sector. The general rule is that an agency may use contracts with the private sector to carry out its statutory mission as long as the contract is not "specifically prohibited by statute" or "at variance with required statutory provisions or procedures." 1 Ralph C. Nash, Jr. & John Cibinic, Jr., *Federal Procurement Law* 5, 10 (1977) ("Nash & Cibinic"). As these commentators have explained:

---

[17] The argument that the Bureau's 3621(b) designation power is limited by the options spelled out in sections 4002 and 4003 is also undermined by several provisions in BOP's enabling legislation that authorize other permissible places of prisoner incarceration. Section 4125(b) of title 18 authorizes the Attorney General to "establish, equip, and maintain [work] camps upon sites selected by him . . . and designate such camps as places for confinement of persons convicted of" federal offenses. In addition, the Attorney General may use inactive Department of Defense facilities as prisons. Department of Justice Appropriation Authorization Act, Fiscal Year 1979, Pub. L. No. 95-624, § 9, 92 Stat. 3459, 3463 (1978), *reprinted in* 18 U.S C. § 4001 note. Thus, sections 4002 and 4003 do not in fact contain all the options available to the Attorney General in designating places of incarceration.

The authority of the executive to use contracts in carrying out authorized programs is . . . generally assumed in the absence of express statutory prohibitions or limitations. Some statutes contain specific authorization to use contracts, others are silent on the matter and, in some very rare cases, statutes require the use of contracts. However, the executive agencies normally have the discretion to decide whether to accomplish their objectives by contract or through the use of Government employees.

*Id.* at 5. The courts have recognized that government agencies have broad discretionary powers in carrying out their functions, including the authority to contract for services when it is determined to be in the agency's interest. *See, e.g., Local 2017, AFGE v. Brown*, 680 F.2d 722 (11th Cir. 1982) *cert. denied*, 459 U.S. 1104 (1983); *Local 2855, AFGE v. United States*, 602 F.2d 574 (3d Cir. 1979). Thus, the power of an agency to contract for services is not dependent on specific authority to enter into such contracts. *See* Memorandum for Clair A. Cripe, General Counsel, Federal Bureau of Prisons, from Ralph Tarr, Deputy Assistant Attorney General, Office of Legal Counsel (Dec. 30, 1982).[18]

It is well established that BOP has authority to contract with the private sector for various services in connection with incarceration facilities. *See* Opinion Request (citing 40 U.S.C. § 471; 41 U.S.C. § 252(a); 48 C.F.R. §§ 1.101, 2.101); Privatization Hearing at 132-33, 170-72. For example, BOP has entered into private contracts for food service and medical, educational, and psychological services, and for consulting and other services in connection with Federal Prison Industries. Privatization Hearing at 132-33, 170-72. *See also* President's Commission at 147 ("Contracting for services and nonsecure facilities is a common practice in the field of corrections. Virtually all the individual components of corrections (such as food services, medical services and counseling, educational and vocational training, recreation, maintenance, transportation, security and industrial programs) have been provided by private contractors.").

GAO claims that it does not dispute BOP's authority generally to contract with the private sector for goods and services. *See* GAO Report at 50 ("As a general proposition, an agency may use contracts to carry out any activity

---

[18] We do not suggest that there are no limitations on the authority of a governmental entity to contract for goods or services. For example, a governmental entity may not enter into a contract that is specifically prohibited by statute or that is at variance with statutory provisions or procedures. *See* 1 Nash & Cibinic at 10. In addition, some functions are considered to be inherently governmental in nature and may not be delegated to nongovernmental entities. *See* OMB Circular A-76 (Aug. 4, 1983). This memorandum also does not address possible constitutional limitations on contracting. *See generally Constitutional Limits on "Contracting Out" Department of Justice Functions Under OMB Circular A-76*, 14 Op. O.L.C. 94 (1990). We are, of course, available to consult with you or your staff as to constitutional issues that might arise in connection with contracts with the private sector for prison facilities.

that the agency is authorized to perform under its enabling legislation or other statutory provision without a specific grant of contracting authority."). Rather, GAO contends that contracting with the private sector for incarceration facilities would be "inconsistent with the statutory scheme," which "describes with specificity the courses of action the government may use to obtain incarceration facilities." *Id. See generally* 1 Nash & Cibinic at 10 (governmental entity may not enter into a "contract which is specifically prohibited by statute, or at variance with required statutory provisions or procedures"). GAO's argument proves too much. Section 4002 states that "the Attorney General may contract . . . with the proper authorities of any State, Territory, or political subdivision thereof, for *imprisonment, subsistence, care, and proper employment of such persons*." *Id.* (emphasis added). To the extent GAO believes that contracting for private incarceration facilities would be inconsistent with section 4002, private contracting for other items involving the subsistence and care of prisoners would call into question BOP's well-established authority, apparently not questioned by Congress, to enter into contracts with the private sector for food service, clothing, and other goods and services.

More fundamentally, we disagree with GAO's assertion that private contracts for incarceration of federal prisoners would be "inconsistent with the statutory scheme." GAO Report at 50. As we have previously explained, *see supra* pp. 67-70, 72-73, nothing in the text or legislative history of section 3621(b) or sections 4002 and 4003 indicates that Congress intended to prohibit such contracts. Given the broad and unlimited designation authority contained in section 3621(b), we cannot conclude that private contracts would "conflict with the statutory scheme" based on the grants of authority contained in sections 4002 and 4003 and Congress' purported silence concerning private contracts.[19]

---

[19] We also reject GAO's contention that our interpretation of section 3621(b) is undercut by certain other statutes that explicitly authorize the use of private facilities for confinement. GAO Report at 49-50 (citing 18 U.S.C. §§ 4013(a)(3) and 5040). The weakness of the argument can be seen by applying it consistently to 18 U.S.C. § 4013.

Section 4013(a) authorizes the Attorney General to make payments from appropriated funds:

[in] support of United States prisoners [in non-Federal institutions] for —
(1) necessary clothing;
(2) medical care and necessary guard hire;
(3) the housing, care, and security of persons held in custody of a United States marshal . . . under agreements with State or local units of government or *contracts with private entities*;

(emphasis added). GAO argues that section 4013(a)(3)'s reference to private contracts for prisoner incarceration indicates that when Congress intended to allow private contracting it did so explicitly. Again, GAO's argument proves too much. It would preclude private contracting for clothing, medical care, and security because subsections (a)(1) and (a)(2) do not explicitly permit private contracts as compared to subsection (a)(3). That would again call into question the Bureau's well-established authority to contract with the private sector for such items. *See supra* p. 74.

## Conclusion

For the foregoing reasons, we conclude that the Bureau of Prisons has the statutory authority to contract with the private sector for secure facilities.

TIMOTHY E. FLANIGAN
*Acting Assistant Attorney General*
*Office of Legal Counsel*
