CONNECTICUT NATIONAL BANK *v.* GERMAIN,
TRUSTEE FOR THE ESTATE OF O'SULLIVAN'S
FUEL OIL CO., INC.

No. 90–1791.   Argued January 21, 1992—Decided March 9, 1992

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST,
C. J., and SCALIA, KENNEDY, and SOUTER, JJ., joined.   STEVENS, J., filed

an opinion concurring in the judgment, *post*, p. 255. O'CONNOR, J., filed an opinion concurring in the judgment, in which WHITE and BLACKMUN, JJ., joined, *post*, p. 256.

*Janet C. Hall* argued the cause for petitioner. With her on the briefs were *G. Eric Brunstad, Jr.,* and *Linda L. Morkan.*

*Thomas M. Germain* argued the cause and filed a brief for respondent.

JUSTICE THOMAS delivered the opinion of the Court.

In this case, we determine the appealability of an interlocutory order issued by a district court sitting as a court of appeals in bankruptcy.

I

In 1984, O'Sullivan's Fuel Oil Co., Inc., filed a bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut. Although the case began as a reorganization under Chapter 11 of the Bankruptcy Code, in 1986 the Bankruptcy Court converted it into a liquidation under Chapter 7. Petitioner Connecticut National Bank (CNB) is successor in interest to one of O'Sullivan's creditors. Respondent Thomas M. Germain is trustee of O'Sullivan's estate.

On June 1, 1987, Germain sued CNB in Connecticut state court, seeking to hold the bank liable for various torts and breaches of contract. CNB removed the suit to the United States District Court for the District of Connecticut, which, pursuant to local rule, automatically referred the proceeding to the Bankruptcy Court overseeing the liquidation. Germain then filed a demand for a jury trial. CNB moved to strike Germain's demand. The Bankruptcy Court denied CNB's motion, *In re O'Sullivan's Fuel Oil Co.,* 103 B. R. 388 (Conn. 1989), and the District Court affirmed, *Germain* v. *Connecticut Nat. Bank,* 112 B. R. 57 (Conn. 1990).

CNB then tried to appeal to the Court of Appeals for the Second Circuit, but the court dismissed for lack of jurisdic-

tion. 926 F. 2d 191 (1991). The Second Circuit held that a court of appeals may exercise jurisdiction over interlocutory orders in bankruptcy only when a district court issues the order after having withdrawn a proceeding or case from a bankruptcy court, and not when the district court acts in its capacity as a bankruptcy court of appeals. We granted certiorari, 502 U. S. 905 (1991), and now reverse and remand.

## II

Courts of appeals have jurisdiction over "[i]nterlocutory orders of the district courts of the United States" under 28 U. S. C. § 1292.* CNB contends that § 1292(b) applies by its terms in this case, and that the Second Circuit therefore could have exercised discretionary jurisdiction over its appeal. Germain argues that § 1292 does not apply at all in this case because Congress limited § 1292 through 28 U. S. C.

---

*That section provides in relevant part:

"(a) . . . [T]he courts of appeals shall have jurisdiction of appeals from:

"(1) Interlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

"(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof . . . ;

"(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

"(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . ."

§ 158(d), which deals with bankruptcy jurisdiction.  CNB responds that nothing in § 158(d) limits § 1292.  We agree with CNB.

Bankruptcy appeals are governed for the most part by § 158.  This section comprises four subsections, three of which concern us here.  Subsection (a) gives the district courts authority to hear appeals from final and interlocutory orders of the bankruptcy courts.  The District Court, as we have noted, had jurisdiction under this provision to hear CNB's appeal from the Bankruptcy Court.  Subsection (b) permits the judicial council of any circuit to establish a bankruptcy appellate panel to fill the role of the district courts under subsection (a).  Subsection (d), which is pivotal in this case, provides:

> "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."

Neither this subsection nor any other part of § 158 mentions interlocutory orders entered by the district courts in bankruptcy.  The parties agree, as they must, that § 158 did not confer jurisdiction on the Court of Appeals.

Germain contends that the Court of Appeals did not have jurisdiction under § 1292 either, for § 158(d), in his view, precludes jurisdiction under § 1292 by negative implication.  Germain reasons as follows: Although §§ 1291 and 1292 appear to cover the universe of decisions issued by the district courts—with § 1291 conferring jurisdiction over appeals from final decisions of the district courts, and § 1292 conferring jurisdiction over certain interlocutory ones—that cannot in fact be so.  If § 1291 did cover all final decisions by a district court, he argues, that section would render § 158(d) superfluous, since a final decision issued by a district court sitting as a bankruptcy appellate court is still a final decision of a district court.  If § 158(d) is to have effect, Germain contends, then that section must be exclusive within its own

domain, which he defines as the universe of orders issued by district courts sitting pursuant to § 158(a) as courts of appeals in bankruptcy. When a district court enters an order in that capacity, Germain concludes, only § 158(d) can confer jurisdiction, and if it does not, nothing else can. Germain claims to find support for his view in his reading of the legislative history of § 158(d).

Contrary to Germain's contention, we need not choose between giving effect on the one hand to § 1291 and on the other to § 158(d), for the statutes do not pose an either-or proposition. Section 1291 confers jurisdiction over appeals from "final decisions of the district courts" acting in any capacity. Section 158(d), in contrast, confers jurisdiction over appeals from final decisions of the district courts when they act as bankruptcy appellate courts under § 158(a), and also confers jurisdiction over final decisions of the appellate panels in bankruptcy acting under § 158(b). Sections 1291 and 158(d) do overlap, therefore, but each section confers jurisdiction over cases that the other section does not reach.

Redundancies across statutes are not unusual events in drafting, and so long as there is no "positive repugnancy" between two laws, *Wood* v. *United States*, 16 Pet. 342, 363 (1842), a court must give effect to both. Because giving effect to both §§ 1291 and 158(d) would not render one or the other wholly superfluous, we do not have to read § 158(d) as precluding courts of appeals, by negative implication, from exercising jurisdiction under § 1291 over district courts sitting in bankruptcy. We similarly do not have to read § 158(d) as precluding jurisdiction under § 1292. While courts should disfavor interpretations of statutes that render language superfluous, in this case that canon does not apply.

In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a

legislature says in a statute what it means and means in a statute what it says there. See, *e. g.*, *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241–242 (1989); *United States* v. *Goldenberg*, 168 U. S. 95, 102–103 (1897); *Oneale* v. *Thornton*, 6 Cranch 53, 68 (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin* v. *United States*, 449 U. S. 424, 430 (1981); see also *Ron Pair Enterprises, supra,* at 241.

Germain says that legislative history points to a different result. But we think that judicial inquiry into the applicability of § 1292 begins and ends with what § 1292 does say and with what § 158(d) does not. Section 1292 provides for review in the courts of appeals, in certain circumstances, of "[i]nterlocutory orders of the district courts of the United States." Section 158(d) is silent as to review of interlocutory orders. Nowhere does § 1292 limit review to orders issued by district courts sitting as trial courts in bankruptcy rather than appellate courts, and nowhere else, whether in § 158(d) or any other statute, has Congress indicated that the unadorned words of § 1292 are in some way limited by implication. "It would be dangerous in the extreme to infer . . . that a case for which the words of an instrument expressly provide, shall be exempted from its operation." *Sturges* v. *Crowninshield,* 4 Wheat. 122, 202 (1819); see also *Regents of Univ. of Cal.* v. *Public Employment Relations Bd.,* 485 U. S. 589, 598 (1988). There is no reason to infer from either § 1292 or § 158(d) that Congress meant to limit appellate review of interlocutory orders in bankruptcy proceedings. So long as a party to a proceeding or case in bankruptcy meets the conditions imposed by § 1292, a court of appeals may rely on that statute as a basis for jurisdiction.

The judgment of the Court of Appeals for the Second Circuit is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

Whenever there is some uncertainty about the meaning of a statute, it is prudent to examine its legislative history.[1] In this case, such an examination is appropriate because petitioner's interpretation of 28 U. S. C. § 158(d) creates an unusual overlap with 28 U. S. C. § 1291.

Rejecting petitioner's position, the Court of Appeals concluded that in enacting the current system of bankruptcy appeals, Congress limited the scope of § 1292(b), excluding review by the courts of appeals of certain interlocutory bankruptcy orders. If Congress had intended such a significant change in the scheme of appellate jurisdiction, some indication of this purpose would almost certainly have found its way into the legislative history. The legislative record, however, contains no mention of an intent to limit the scope of § 1292(b). This silence tends to support the conclusion that no such change was intended.[2]

Accordingly, notwithstanding the inferences drawn by the Court of Appeals, the legislative history is not only consist-

---

[1] See *Wisconsin Public Intervenor* v. *Mortier* 501 U. S. 597, 611, n. 4 (1991) ("[C]ommon sense suggests that inquiry benefits from reviewing additional information rather than ignoring it"). As Judge Learned Hand advised, statutes "should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them." *Lehigh Valley Coal Co.* v. *Yensavage*, 218 F. 547, 553 (CA2 1914), cert. denied, 235 U. S. 705 (1915). Legislative history helps to illuminate those purposes.

[2] See *American Hospital Assn.* v. *NLRB*, 499 U. S. 606, 613–614 (1991); *Edmonds* v. *Compagnie Generale Transatlantique*, 443 U. S. 256, 266–267 (1979); see also *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 602 (1980) (REHNQUIST, J., dissenting) ("In a case where the construction of legislative language such as this makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night"). Similarly, Justice Frankfurter's scholarly observation concerning the interpretation of a statutory text also applies to the analysis of legislative history: "One must . . . listen attentively to what it does not say." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 536 (1947).

ent with petitioner's interpretation of the statute, but also actually supports it. For this reason, and because I agree with the Court's textual analysis, I concur in its judgment.

JUSTICE O'CONNOR, with whom JUSTICE WHITE and JUSTICE BLACKMUN join, concurring in the judgment.

I agree that when Congress enacted 28 U. S. C. § 158(d) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress probably did not intend to deprive the courts of appeals of their longstanding jurisdiction over interlocutory appeals in bankruptcy cases. But I think we should admit that this construction of the statutes *does* render § 158(d) largely superfluous, and that we *do* strive to interpret statutes so as to avoid redundancy. Cf. *ante*, at 253–254. In this case, I think it far more likely that Congress inadvertently created a redundancy than that Congress intended to withdraw appellate jurisdiction over interlocutory bankruptcy appeals by the roundabout method of reconferring jurisdiction over appeals from final bankruptcy orders. I would reverse the judgment below only for this reason.