**CARNIVAL CRUISE LINES, INC., Hal Antillen, N.V., Hal Shipping Ltd., and Wind Surf Limited, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Slip Op. 96–89.
Court No. 93–10–00691.

United States Court of International Trade.

June 6, 1996.

Export Clause of the United States Constitution, Article I, Section 9, Clause 5. Plaintiffs' original complaint related to specific sections of the HMT not dealing with exports; Plaintiffs' (second) amended complaint now claims that the provisions of the HMT which relate to exports are not severable from the remaining portions of the HMT, thus the entire HMT is unenforceable. Pl.s' Second Amended Complaint, Count IV, para. 43. Plaintiffs therefore claim the HMT as it relates to their operations is unenforceable. Pl.s' Second Amended Complaint, Count IV, para. 44.

The issue raised by Plaintiffs' amended complaint is whether those portions of the HMT held unconstitutional by this Court, namely the HMT "as it applies to exports," may be severed from those portions of the HMT that deal with Plaintiffs' passenger operations. The Court finds this issue to be solely one of law that may now be addressed.

■ The principles governing the issue of severability of unconstitutional portions of a statute from the remainder of that statute were summarized by the Supreme Court in *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). In that case, the Court considered whether an unconstitutional legislative veto provision of the Employee Protection Program (enacted as section 43 of the Airline Deregulation Act of 1978) rendered the entire Employee Protection Program unconstitutional. The Court set forth the following:

> "[A] court should refrain from invalidating more of the statute than is necessary.... '[W]henever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.'" *Regan v. Time, Inc.,* 468 U.S. 641, 652 [104 S.Ct. 3262, 3269, 82 L.Ed.2d 487] (1984) (plurality opinion), quoting *El Paso & Northeastern R. Co. v. Guitierrez [Gutierrez],* 215 U.S. 87, 96 [30 S.Ct. 21, 24–25, 54 L.Ed. 106] (1909). The standard for determining the severability of an unconstitutional provision is well established:

Paul, Weiss, Rifkind, Wharton & Garrison (Robert E. Montgomery, Jr., Robert P. Parker, Swati Agrawal), Washington, DC, for plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (John K. Lapiana), Washington, DC, for defendant.

## MEMORANDUM OPINION
## AND ORDER

MUSGRAVE, Judge.

In this consolidated case, this Court recently granted Plaintiffs' motion for leave to amend its complaint to include a new claim which arose as a result of the Court's recent decision in *United States Shoe Corp. v. United States,* 19 CIT ——, 907 F.Supp. 408 (1995), *appeal docketed,* No. 96–1210 (Fed. Cir. Feb. 14, 1996). In that case a three judge panel of the Court held that the Harbor Maintenance Tax (26 U.S.C. §§ 4461–4462, hereinafter "HMT") is unconstitutional as it applies to exports, as it violates the

" 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' " *Buckley v. Valeo*, 424 U.S. 1, 108 [96 S.Ct. 612, 677, 46 L.Ed.2d 659] (1976) (*per curiam* ), quoting *Champlin Refining Co. v. Corporation Comm'n of Oklahoma*, 286 U.S. 210, 234 [52 S.Ct. 559, 564–65, 76 L.Ed. 1062] (1932). Accord: *Regan v. Time, Inc.*, 468 U.S., at 653 [104 S.Ct. at 3269–70]; *INS v. Chadha*, 462 U.S., at 931–932 [103 S.Ct. at 2773–74]; *United States v. Jackson*, 390 U.S. 570, 585 [88 S.Ct. 1209, 1218, 20 L.Ed.2d 138] (1968).

Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently. *See, e.g., Hill v. Wallace*, 259 U.S. 44, 70–72 [42 S.Ct. 453, 458–59, 66 L.Ed. 822] (1922) (Future Trading Act held nonseverable because valid and invalid provisions so intertwined that the Court would have to rewrite the law to allow it to stand) . . . .

The more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress . . . . The final test, for legislative vetoes as well as for other provisions, is the traditional one: the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted.

The inquiry is eased when Congress has explicitly provided for severance by including a severability clause in the statute. This Court has held that the inclusion of such a clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision. See *INS v. Chadha*, 462 U.S., at 932 [103 S.Ct. at 2774]; *Champlin Refining Co. v. Corporation Comm'n of Oklahoma*, 286 U.S., at 235 [52 S.Ct. at 565]. In such a case, unless there is strong evidence that Congress intended otherwise, the objec-tionable provision can be excised from the remainder of the statute. In the absence of a severability clause, however, Congress' silence is just that—silence—and does not raise a presumption against severability. *See Tilton v. Richardson*, 403 U.S. 672, 684 [91 S.Ct. 2091, 2098–99, 29 L.Ed.2d 790] (1971) (plurality opinion); *United States v. Jackson*, 390 U.S., at 585, n. 27 [88 S.Ct. at 1218, n. 27].

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684–86, 107 S.Ct. 1476, 1479–81, 94 L.Ed.2d 661 (1987) (footnotes omitted). The Supreme Court examined the language and structure of the statute, as well as the legislative history in determining that Congress intended for severability of the legislative veto provision. *Id.*, 480 U.S. at 697, 107 S.Ct. at 1486.

The Court first turns to the question of whether the HMT, absent those provisions which violate the Export Clause of the Constitution, is capable of functioning independently.

The HMT was enacted as a means of funding development and maintenance of the nation's ports and waterways. The monies collected under the HMT are deposited into a designated trust fund from which monies are appropriated for specific projects. In addition to the HMT, Congress redesignated a previously enacted inland waterways tax and trust fund as part of the revenue provisions of the Water Resources Development Act of 1986, Pub.L. No. 99–662, 100 Stat. 4082 ("WRDA"). The HMT and the inland waterways tax, together with their corresponding trust funds, comprise Title XIV of the WRDA. Title XIV may also be referred to as the Harbor Maintenance Revenue Act of 1986 ("HMRA").

The HMT operates in a straightforward manner. It begins by imposing a tax on "any port use." § 4461(a). Port use is defined as "(A) the loading of commercial cargo on, or (B) the unloading of commercial cargo from a commercial vessel at a port." § 4462(a)(1). Commercial cargo is defined as "any cargo transported on a commercial vessel, including passengers transported for

compensation or hire." § 4462(a)(3). Regulations made pursuant to statutory powers granted the Secretary of the Treasury, § 4462(i), further define commercial cargo as "... merchandise transported on a commercial vessel and passengers transported for compensation or hire. Whenever the term 'cargo' is used, it means merchandise, but not passengers." 19 C.F.R. § 24.24(b)(2). The amount of tax is set according to the value of commercial cargo. § 4461(b). Section 4461(c) sets the liability and time of imposition of tax. Under section 4461(c)(1), liability is imposed on three categories of taxpayers, as follows:

(A) in the case of cargo entering the United States, the importer,

(B) in the case of cargo to be exported from the United States, the exporter, or

(C) in any other case, the shipper.

Under section 4461(c)(2), the time of liability is, except as provided by regulations, as follows:

(A) in the case of cargo to be exported from the United States, at the time of loading, and

(B) in any other case, at the time of unloading.

19 C.F.R. § 24.24(e)(4)(i) sets the time and place of liability of passengers to be "... when a passenger boards or disembarks a commercial vessel at a port within the definition of this section, the operator of that vessel is liable for the payment of the port use fee.... The vessel operator on each cruise is liable only once for the port use fee for each passenger."

 The only portions of the HMT which explicitly address exports, and thus are unconstitutional, are section 4461(c)(1)(B), which is a separate and distinct category of liability that operates independently of the categories of liability dealing with "imports" and "other cases" (§§ 4461(c)(1)(A) and (C)); and section 4461(c)(2)(A), a provision which sets the time of liability. In removing these "export" provisions, the statute still imposes liability on the remaining categories of liability other than exports. The HMT can still be imposed on any port use except for loading of commercial cargo [for export]. (§ 4461(a)(B)). Ports can still be "used," as commercial cargo can still be "unloaded." (§ 4461(a)(B)). The time of liability can still be "at the time of unloading." (§ 4461(c)(2)(B)). The party liable for payment of the tax in the case of cargo entering the United States can still be the importer, (§ 4461(c)(1)(A)); and in any other case [but for exports and imports], the party liable can still be the shipper. (§ 4461(c)(1)(C)). Thus, neither of the "export" provisions are essential to the functioning of the statute in relation to the remaining categories of liability for port use. The HMT is therefore capable of functioning independently of the invalid "export" provisions.

The Court now turns to the question of whether the remaining statute, absent the "export" provisions held invalid, is legislation Congress would not have enacted.

Plaintiffs question whether the severability clause applies to specific provisions of the HMRA by pointing out that the severability clause was included under a separate title of the WRDA (Title IX), and not part of what Plaintiffs call the "free-standing" HMRA. Pls' Br. at 11. Plaintiffs also point out that Title IX is "a repository for the various miscellaneous provisions in the statute." *Id.* at 12. Furthermore, they argue that the legislative history of the WRDA in general, and the severability clause in particular, indicate that Congress was only concerned that the possible unconstitutionality of the tax on exports not jeopardize the entire WRDA. *Id.* at 12–15. Plaintiffs also argue that the sparse legislative history of this provision provides no indication that Congress intended it to apply to specific provisions of the HMRA, and that it is a mere formality. *Id.* at 12. Thus, Plaintiffs argue, the severability clause provides "absolutely no support for the preservation of the non-export provisions of the port use tax following *U.S. Shoe.*" *Id.*

The Court disagrees. Plaintiffs in essence are contending that by the structure of the

WRDA, Congress did not intend the severability clause to apply to a specific provision (tax on exports), but to a larger, more general provision (the HMT), but not to a larger, even more general provision (the HMRA (Title XIV of the WRDA)), if it applies at all; and that by the history of the WRDA, Congress was concerned that the tax on exports would jeopardize the entire WRDA, so it included a severability clause in the WRDA to ensure that the tax on exports could be severed from the remaining provisions of the statute, thereby taking those remaining provisions of the WRDA out of jeopardy; but that the severability clause is to be applied so that the remaining valid provisions of the HMT would be severed from the WRDA as well. The Court finds the logic of these arguments untenable.

■ The Court begins with the language of the severability clause, as that is the foremost expression of Congressional intent. *Connecticut Nat. Bank. v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). The WRDA contains a severability clause which states as follows:

> If any provision of this Act or the application of any provision of this Act to any person or circumstance, is held invalid, the application of such provision to other persons or circumstances, and the remainder of this Act, shall not be affected thereby.

WRDA § 949, 33 U.S.C. § 2304 (1988). The inclusion of such a provision creates the presumption that Congress did not intend the validity of the WRDA to depend upon the validity of the constitutionally offensive provision—in this case, those portions of the HMT dealing with exports. *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684–86, 107 S.Ct. 1476, 1479–81, 94 L.Ed.2d 661 (1987) (citing *INS v. Chadha,* 462 U.S. 919, 932, 103 S.Ct. 2764, 2774, 77 L.Ed.2d 317 (1983)). The severability clause clearly indicates that Congress intended, in the event a provision of the statute is not valid as it applies to a person or circumstance, that such provision would still be valid as to other persons or circumstances. Thus, the language of the severability clause readily accommodates problems of unconstitutionality with all or a portion of the HMT. The HMT specifically sets forth the persons liable for payment of the port use tax, and the circumstances under which payment is to be made. Thus, it appears Congress intended the severability clause to apply to the HMT, and that the inapplicability of the port use tax to exports shall not affect applicability of the HMT to other persons or circumstances provided for in the HMT, or the WRDA in general.

The structure of the WRDA also favors severability of the tax on exports only. The severability clause is included under Title IX of the WRDA, entitled "General Provisions." The HMT is included under Title XIV of the WRDA, entitled "Revenue Provisions," but may be cited as the Harbor Maintenance Revenue Act of 1986. Harbor Maintenance Revenue Act of 1986, P.L. 99–662, Title XIV, § 1401, 100 Stat. 4266 (1986). Thus, Plaintiffs' characterizations of the HMRA aside, both provisions are part of, and not separate from the WRDA. Moreover, the placement of the severability clause within the general provisions of the WRDA indicates that Congress intended these provisions, including the severability clause, to apply to all of the WRDA, not just the provisions within Title IX. These general provisions, while they might be miscellaneous in nature, have applicability to various provisions throughout the statute, as indicated by titles such as "Annual Obligation Ceilings (§ 901)," "Maximum Cost of Projects (§ 902)," or "Review of Cost Effectiveness of Design (§ 911)." Thus, the structure of the WRDA does not indicate that Congress intended for the severability clause not to apply to specific revenue provisions of the WRDA. It does not indicate that Congress intended the validity of the WRDA to depend upon the validity of the export tax. Nor does the structure indicate that the validity of the HMT or the HMRA depends upon the validity of the export tax.

Plaintiffs argument that the sparse legislative history of the severability clause provides no indication that Congress intended it to apply to specific provisions of the HMRA

attempts to shift the presumption against severability. Given a severability clause, the burden is not to demonstrate that Congress did intend to provide for severability, but to demonstrate that Congress did not intend to provide for severability. For severability not to apply, the history, language and structure of the WRDA against severability must be strong. Absent strong evidence against severability, the presumption is that Congress intended any offensive provision to be severed from those which are valid. *Alaska Airlines, Inc. v. Brock,* 480 U.S. at 686, 107 S.Ct. at 1481.

The legislative history reveals that four committees of the House of Representatives (Public Works and Transportation, Interior and Insular Affairs, Ways and Means, and Merchant Marine and Fisheries) considered the House version of the bill, H.R. 6, 99th Cong., 1st Sess. (1985); two committees of the Senate (Environment and Public Works, and Finance) considered the Senate version of the bill S. 1567, 99th Cong., 1st Sess. (1985); and a conference committee of the House and Senate reconciled the different version of the bill before passage.

In the House, Public Works and Transportation was first to report the bill, with amendments, on August 1, 1985.[1] Interior and Insular Affairs favorably reported the bill, with amendments, on September 16, 1985, and recommended passage.[2] Ways and Means favorably reported the bill, with amendments, on September 23, 1985, and recommended passage.[3] Merchant Marine and Fisheries ("Merchant Marine") also favorably reported the bill with amendments on September 23, and also recommended passage.[4]

In the Senate, Environment and Public Works favorably reported an original bill (S. 1567) on August 1, 1985, and recommended passage.[5] Finance favorably reported the bill, with an amendment, and recommended passage on January 8, 1986.[6]

The Committee of Conference recommended a reconciled version of the bills to the House and Senate on October 17, 1986.[7]

Of the House and Senate reports, only one committee included a severability clause in its version of the bill. Merchant Marine raised a concern about the constitutionality of the tax on exports. To prevent that tax from jeopardizing the remaining provisions of the HMT (§ 110 of the Merchant Marine report), Merchant Marine added a severability clause (§ 116) which set forth:

> If section 110 of this title is invalid, all valid parts that are severable from section 110 remain in effect. *If section 110 of this title is invalid in one or more of its applications, section 110 remains in effect in all valid applications that are severable from the invalid applications.*

H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 4, at 13 (1985) (emphasis added). The Committee provided the following explanation for section 116:

> Lastly, Mr. Bateman's amendment [section 116] would provide for severability should any of the provisions of section 110 be found unconstitutional or invalid for other reasons. The concern of the Committee and the subject of the amendment was, for example, that the constitutional arguments that had been made against imposing a tax *on exports* might result in the legislation being declared invalid and it was the de-

---

1. H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 1 (1985).

2. H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 2 (1985).

3. H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 3 (1985).

4. H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 4 (1985).

5. S.Rep. No. 126, 99th Cong., 1st Sess. (1985), *reprinted in* 1986 U.S.C.C.A.N. 6639.

6. S.Rep. No. 228, 99th Cong., 1st Sess. (1985), *reprinted in* 1986 U.S.C.C.A.N. 6705.

7. *Water Resources Development Act of 1986,* H.R.Conf.Rep. No. 1013, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 6723.

sire of the Committee to preserve all other provisions of the Act if that or a similar provision be found invalid.

*Id.* at 30 (emphasis added). The Committee of Conference reported the bill as it essentially was enacted, with the severability clause set forth as section 949 of Title IX. H.R.Conf.Rep. No. 1013, 99th Cong., 2d Sess., at 123 (1986). The Conference Committee did not explain why it included the provision, or why the provision was placed under Title IX.

Plaintiffs argue that Merchant Marine was concerned about severability, "but *only* to the extent that the questionable constitutionality of the tax might affect the rest of the legislation." Pl.s' Br. at 14 (emphasis in original). Plaintiffs contend that "the severability clause was directed solely at the port use tax to make clear that the comprehensive reforms of the U.S. water policy on which Congress had worked for a number of years would not be drawn into question by an Export Clause challenge." *Id.* Plaintiffs further argue that this view is supported by Ways and Means' decision not to include a severability clause in its bill, but rather to report a "free-standing" HMRA. *Id.* at 15. Plaintiffs argue that by reporting a separate "free-standing" title, Merchant Marine's concern that an invalid port use tax could jeopardize the entire WRDA was minimized. *Id.*

Plaintiffs appear to be correct inasmuch as Merchant Marine was concerned about the possible invalidity of the tax, and that Merchant Marine was concerned that the tax might affect the remainder of the statute. However, Merchant Marine's specific concern over the validity of the tax was that a tax on exports violated the Export Clause.[8] The Committee therefore added the severability provision (§ 116) which clearly indicates that it intended that all valid applications of section 110 remain in effect apart from the invalid applications. In this instance, the invalid application of section 110

(the port use tax) would be the tax on exports. Thus it appears Merchant Marine intended the tax on exports to be severed from the remaining valid applications of the port use tax, rather than severing the port use tax in its entirety.

Plaintiffs' argument that the Ways and Means Committee decision not to include a severability clause but rather to report a "free-standing" bill to minimize concerns about an unconstitutional port use tax jeopardizing the entire WRDA finds no support in the legislative history. It is clear that the revenue portion reported by Ways and Means was to be under a specific title, but that it was to be part of the WRDA. It does not appear that Ways and Means considered Merchant Marine's report, as both reports were issued the same day. Moreover, there is no explanation provided by Ways and Means that sets forth any such reasoning.

From the committee reports there is no doubt that Congress struggled with the question of what would be the best basis for taxing port users. The debate largely centered on a tonnage basis versus an *ad valorem* basis, with a tonnage tax levying its burden more on bulk cargoes, and an *ad valorem* tax levying its burden more on containerized manufactured goods. *See, e.g.,* S.Rep. No. 126, 99th Cong., 1st Sess. 9 (1985), *reprinted in* 1986 U.S.C.C.A.N. 6639, 6646–47; S.Rep. No. 228, 99th Cong., 1st Sess. 5–6 (1985), *reprinted in* 1986 U.S.C.C.A.N. 6705, 6710. It is also clear that Congress desired an equitable and uniform tax. *Id.* What is not clear, however, is how invalidating exports alone would generate inequities that Congress attempted to avoid in selecting one basis over another. It is also not clear that Congress intended to eliminate the whole tax in the event the tax on exports were held invalid.

Without more support, the Court feels it unwise to speculate as to Congress' intent in removing severability from the revenue provisions—as set forth in the Merchant Marine Report, to the general provisions of the WRDA—as set forth in the Conference Re-

---

8. *See* H.R.Rep. No. 251, 99th Cong., 1st Sess., pt. 4, 23–24 (1985). *See also, id.,* at 34: "Cognizant of the debate which could be legally joined over the validity of a fee or tax on cargo, *particularly*

*as applied to exports,* the Committee has added a new section 116 severability provision to H.R. 6." (emphasis added).

port and in the statute. Therefore, the Court will not adopt Plaintiffs' interpretation of the legislative history of the severability clause. In sum, the legislative history of the severability clause and of the HMT does not provide strong evidence that Congress intended the entire tax to be invalidated should a portion of it be invalidated. Congress intended to tax "any port use." However, Congress' powers to tax are prescribed by the Export Clause. Congress provided for severability in the event provisions of the WRDA were held invalid. Congress did not provide language in the WRDA demonstrating its intent to have the entire HMT severed from the WRDA in the event a portion of the HMT was held unconstitutional. The legislative history, while it indicates Congress was aware of the possibility of the tax on exports being invalid, is far from clear as to Congress' intention should the tax on exports be so declared. Hence there is not evidence in the language, structure, or legislative history strong enough to overcome the presumption in favor of severability that attaches when Congress includes a severability clause in a statute. The Court therefore is unable to conclude that Congress would not have enacted the HMT absent the tax on exports.

### Conclusion

Upon review of all of the papers filed in this case, the Court finds that the issue of severability is solely an issue of law which properly may be decided by summary judgment. The Court holds, as a matter of law, that those portions of the HMT that apply to exports, and are thus unconstitutional in accordance with this Court's opinion in *U.S. Shoe,* i.e., 26 U.S.C. §§ 4461(c)(1)(B) and 4461(c)(2)(A), are severable from the remainder of the HMT, in particular those portions of the statute that involve Plaintiffs' operations as shippers providing passenger services. Accordingly, it is hereby **ORDERED** that Plaintiffs' motion for summary judgment on Count IV of their second amended complaint is denied, it is further **ORDERED** that Defendant respond to Plaintiffs' motion for partial summary judgment within 60 days of the date of this order.

The Court, in *U.S. Shoe,* held that the HMT is unconstitutional with respect to ex-

ports. This Court now holds that the invalid export provisions of the HMT are severable from the valid portions. The issue of constitutionality is currently on appeal, as previously discussed. The Court believes that both the issue of constitutionality and the issue of severability are threshold issues which ultimately should be resolved prior to addressing the remaining issues in this case. Furthermore, while the Court concludes that the language, structure, and history of the WRDA demonstrates an intent to sever invalid from valid portions of the HMT, the legislative history of the WRDA also reflects Congress' concern over validity of the tax on exports, as well as its struggle over the proper basis to tax port use. Therefore, pursuant to 28 U.S.C. § 1292(d)(1), the Court finds that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion, and that an immediate appeal from this order may materially advance the ultimate termination of this litigation.