# Reimbursing Transition-Related Expenses Incurred Before the Administrator of General Services Ascertained Who Were the Apparent Successful Candidates for the Offices of President and Vice President

The General Services Administration can reimburse the Bush/Cheney transition for legitimate transition-related expenses, as contemplated by the Presidential Transition Act of 1963, that were incurred after the general election on November 7, 2000 but prior to December 14, 2000, when the Administrator of GSA ascertained that George W. Bush and Richard Cheney were the apparent successful candidates for the offices of President and Vice President.

January 17, 2001

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

You have requested our opinion concerning whether, under the Presidential Transition Act of 1963, as amended ("Transition Act," or "Act"),[1] funds appropriated for purposes of that Act can be used to reimburse the Bush/Cheney transition for transition-related obligations they incurred after the general election but before the Administrator of the General Services Administration ("Administrator") ascertained that they were the "apparent successful candidates for the office of President and Vice President" within the meaning of the Act. As you have acknowledged, before the Administrator could use any Transition Act funds to pay any such obligation of the President-elect or Vice-President-elect, he "would have to confirm that the obligations were *bona fide* Transition expenses." Letter for Randolph Moss, Assistant Attorney General, Office of Legal Counsel, from Stephenie Foster, General Counsel, General Services Administration at 2 n.2 (Dec. 20, 2000).[2]

The Act authorizes the Administrator to expend the funds appropriated to implement the Act only for those services and facilities that are necessary to assist the transition of the "President-elect" and the "Vice-President-elect." *Id*. § 3(a). The terms "President-elect" and "Vice-President-elect" are defined under the Act to mean the individuals, "following the general elections held to determine the electors," that the Administrator ascertains are "the apparent successful candidates for the office of President and Vice-President, respectively." *Id*. § 3(c). We recently concluded that "[s]ince there cannot be more than one 'President-elect'

---

[1] The Presidential Transition Act is set out in the notes to section 102 of title 3 of the United States Code. *See* 3 U.S.C. § 102 note (1994). The Act has also recently been amended. For those amendments, *see* Presidential Transition Act of 2000, Pub. L. No. 106-293, 114 Stat. 1035.

[2] We also address only your question of whether the Act permits such reimbursements. We do not consider whether there are other legal requirements that might relate more generally to transition-related reimbursements.

and one 'Vice-President-elect' under the Act, the Presidential Transition Act does not authorize the Administrator to provide transition assistance to more than one transition team." *See Authority of the General Services Administration to Provide Assistance to Transition Teams of Two Presidential Candidates*, 24 Op. O.L.C. 322, 322 (Nov. 28, 2000) ("*GSA Authority*"). This conclusion, however, does not answer the question whether the Administrator may reimburse the President-elect and/or Vice-President-elect for obligations related to legitimate transition activities that they incurred beginning the day following the general election (November 8, 2000) but prior to the Administrator's determination that they were in fact "the apparent successful candidates for the office of President and Vice President," which in this election did not occur until December 14, 2000. Based on the language and purposes of the Act, we conclude that the Administrator can reimburse the President-elect and Vice-President-elect for such expenses.

The argument that funds appropriated to implement the Act cannot be used to reimburse the President-elect and Vice-President-elect for post-election transition obligations incurred prior to December 14, 2000 depends on a reading of the Act that would limit such reimbursement only to those obligations incurred by the President-elect or Vice-President-elect after they held that status as defined in the Act. Under such a reading, because the Act defines both these terms as requiring a determination by the Administrator that each candidate is the apparent successful candidate, and because that determination did not take place until December 14, 2000, any obligations incurred prior to that time would not qualify for reimbursement. We conclude, however, that this is not the best reading of the statute.

Section 3(b) of the Act specifies that the Administrator may not expend funds for the provision of services and facilities under the Act

> in connection with any obligations incurred by the President-elect or Vice-President-elect—
>
> (1) before the day following the date of the general elections held to determine the electors of President and Vice President under section 1 or 2 of title 3, United States Code; or
>
> (2) after 30 days after the date of the inauguration of the President-elect as President and the inauguration of the Vice-President-elect as Vice President.

If the term "President-elect" in the phrase "incurred by the President-elect" was itself intended to incorporate a temporal limitation on reimbursement—i.e., no reimbursement for any obligations incurred prior to the time the Administrator determines who the President-elect is—then section 3(b)(1) would serve little purpose. As a practical matter, the Administrator cannot determine who "the apparent successful candidate[] for the office of President" is "before the day

following the date of the general elections held to determine the electors of President and Vice President." The separate prohibition of section 3(b)(1) thus would have little function if the phrase "incurred by the President-elect" already limited reimbursement to those obligations incurred after the designation of the President-elect.[3] Because interpretations of statutes that render language superfluous are disfavored, *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), we reject the view that the phrase "incurred by the President-elect" itself bars reimbursement for legitimate transition obligations incurred by the person ultimately ascertained to be the President-elect prior to the time that the Administrator designates an apparent successful candidate. Section 3(b)(1) evidently recognizes that the person who *eventually* becomes the President-elect may incur transition-related obligations prior to the election itself (or even within the very brief period of time that may exist between the end of the election and the next day), and the provision operates to bar reimbursement of any such expenses.[4]

Further support for this construction is found in section 3(b)(2) of the Act, which bars the Administrator from reimbursing transition obligations "incurred by the President-elect . . . after 30 days after the date of the inauguration of the President-elect as President." Plainly, any transition-related obligations incurred after the date of the inauguration cannot be incurred by "the President-elect"; they would instead be incurred by the President. Thus, section 3(b)(2), like section 3(b)(1), reflects Congress's understanding that the phrase "incurred by the President-elect" does not limit reimbursement to obligations incurred only by a person who, at the time the obligation is incurred, actually is the "President-elect."

Finally, our construction finds support in section 3(a), which sets out the services and facilities that the Administrator is authorized to provide. This section specifically states:

---

[3] It is conceivable that the Administrator could determine that a candidate was the apparently successful candidate after the polls had closed but prior to the day following the election. In such a situation, if the term "President-elect" were understood to operate as a temporal limitation, section 3(b)(1) could serve the independent function of prohibiting the Administrator from reimbursing any transition-related obligations incurred by the President-elect in the few hours after the polls closed but prior to the day following the election. This possibility appears so remote, the amount of obligations that could be incurred so slight and the policy supporting such a distinction so unclear that we consider such a potential independent function to be too insubstantial to support the view that the term "President-elect" itself incorporates a temporal restriction on reimbursement.

[4] This construction of section 3 is consistent with two provisions added to the Act in 2000 that permit the expenditure of funds prior to the election itself. *See* Pub. L. No. 106-293, § 2, 114 Stat. at 1036 (relevant provisions added as paragraphs (9) and (10) of the Presidential Transition Act). Paragraph (10) expressly provides that the Administrator may consult with "any candidate for President or Vice President to develop a systems architecture plan for the computer and communications systems of the candidate to coordinate a transition to Federal systems." *See* Presidential Transition Act, § 3(a)(10). Paragraph (9) involves the development of a transition directory prior to the election. *Id*. § 3(a)(9). Only in this narrow category of pre-election transition expenses does the Act authorize disbursements, thus providing support to our view that transition expenses that might be incurred prior to the day after the election are, generally, not reimbursable due to section 3(b)(1).

> The Administrator of General Services . . . is authorized to provide, upon request, to each President-elect and each Vice-President-elect, for use in connection with his preparations for the assumption of official duties as President or Vice President necessary services and facilities, including [payment of compensation of members of office staffs, payment of expenses for the procurement of experts or consultants, payment of travel expenses and subsistence allowances, etc.].

Although this provision authorizes assistance only to the "President-elect" and the "Vice-President-elect," it does not limit that assistance to expenses incurred after the determination of that fact. To the contrary, the Act as a whole only limits the assistance to obligations that are "in connection with his preparations for the assumption of official duties as President or Vice President" and which were incurred after "the day following the date of the general elections held to determine the electors." This indicates a congressional intent to reimburse the President-elect and Vice-President-elect for any legitimate transition related expenses incurred by them after the general election.

This reading of the statute is also consistent with its purposes, and promotes its goals. Based on a recognition that "the orderly transfer of the executive power in connection with the expiration of the term of office of a President and the inauguration of a new President" is in the "national interest," *id*. § 2, Congress believed that transition efforts are a public function that should be financed by government funds rather than by private interests. *See* 109 Cong. Rec. 13,346 (1963) (statement of Rep. Rosenthal); *id*. at 13,347 (1963) (statement of Rep. Monagan). Congress concluded that it was not fair to place the financial burden on the President-elect, private individuals and the national political parties, *see, e.g.*, *id*. at 13,347 (statement of Rep. Monagan) ("the country cannot reasonably expect that [the costs of transition] will any longer be borne by individuals or even by a party organization. They are an integral part of the presidential administration and should be borne by the public."), and that it was bad public policy for private individuals possibly to feel that they were entitled to special consideration as a result of helping to fund a cost of government. *See, e.g.*, *id*. at 13,346 (statement of Rep. Rosenthal) ("If someone is going to come forward and help pay what we now recognize is a cost of government, which is actually what it is, during the transitional period, that person may feel inclined to think that he is entitled to special consideration from the government.").

Those expenses incurred by the President-elect and Vice-President-elect after the election but prior to December 14, 2000 (and in relation to transition activities as contemplated under the Act) are precisely the sort of expenses that Congress felt it was important to fund publicly because Congress viewed these activities as "expenses that are necessary and pertinent to the job of the Presidency and the

Vice Presidency," 109 Cong. Rec. at 19,738 (statement of Sen. Jackson); "a public function," *id*. at 13,346 (statement of Rep. Rosenthal); "an integral part of the presidential administration," *id*. at 13,347 (statement of Rep. Monagan); and, as President Kennedy expressed in his letter transmitting the proposed legislation that was to become the Presidential Transition Act, "the reasonable and necessary costs of installing a new administration in office." Letter of Transmittal from the President of the United States to the President of the Senate and the Speaker of the House of Representatives (May 29, 1962), *reprinted in* H.R. Rep. No. 88-301, at 9, 12 (1963). As long as the transition obligations at issue were incurred within the time frame specified by the Act, the Administrator's inability, due to the closeness of the election, to determine the President-elect and Vice-President-elect until several weeks after the election itself should not operate to cut off reimbursement of legitimate, post-election transition-related expenses.

To be sure, in our earlier opinion, we concluded that the Act prohibits the Administrator from *expending* transition funds prior to a determination of "the apparently successful candidates." That conclusion, however, is consistent with our determination here that, once the President-elect is determined, the Administrator may expend available funds to reimburse the now-designated President-elect for legitimate post-election transition obligations his transition incurred prior to that designation. The prohibition on expenditure prior to the determination of the apparent successful candidate is designed to ensure both that public funds are not disbursed in a manner that might influence the outcome of a disputed election, and that those funds are expended only on obligations that are truly related to the actual transition of the President-elect and Vice-President-elect. As Representative Fascell, a sponsor and manager of the bill, explained:

> The pending legislation does not seek to do anything about [the determination of the election of the President and the Vice President] or change it in any way, and we are not directly concerned with the question of election, nomination, or the inauguration, for that matter. But we do provide under this pending legislation, as we have provided in previous congressional actions, the right of the Administrator to determine that funds shall be spent for certain services, supplies, and other things *for the benefit of the President-elect and the Vice-President-elect*.

109 Cong. Rec. at 13,349 (emphasis added). However, to construe the Act in such a manner that it bars not only expenditures of funds prior to a determination of the apparent successful candidate, but also reimbursement of legitimate transition obligations that the transition incurs after the election but prior to the designation of the President-elect, would have the perverse effect of denying the President-elect and Vice-President-elect the very funds Congress made available for their

benefit. Neither the language of the statute nor its legislative history supports such a result. As Representative Fascell explained to the House, "this bill formalizes [the process] by authorizing the funding procedures for the orderly transition of executive power so that certain services will be available to the incoming President *between the time of his election and inauguration*." 110 Cong. Rec. 3539 (1964) (emphasis added).[5] The Administrator's determination under section 3(c) of the Act confirms which of the candidates for President is entitled to receive transition funds and when the Administrator may first begin expending those funds; that determination does not also serve to establish the time frame within which legitimate transition-related obligations must be incurred in order to qualify for reimbursement. That time frame is set forth in section 3(b) of the Act.

In sum, we conclude that the General Services Administration can reimburse the transition for legitimate transition-related expenses, as contemplated by the Presidential Transition Act of 1963, that were incurred after November 7, 2000 but prior to December 14, 2000.

RANDOLPH D. MOSS
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] We noted, in the *GSA Authority* opinion, Representative Fascell's statement that:

> This act and the Administrator could in no way, in any way, affect the election of the successful candidate. The only decision the Administrator can make is who the successful candidate—apparent successful candidate—for the purposes of this particular act in order to make the services provided by this act available to them. And, if there is any doubt in his mind, and if he cannot or does not designate the apparently successful candidate, then the act is inoperative. He cannot do anything. There will be no services provided and no money expended.

24 Op. O.L.C. at 325 (quoting 109 Cong. Rec. at 13,349). We read this and similar statements in the legislative history to refer to when the Administrator is authorized to make expenditures under the Act rather than to refer to the period in which obligations can be incurred by the transition for which reimbursement expenditures can ultimately be made by the Administrator following his ascertainment of the President-elect.