14 So.3d 1149 (2009)
FIRST QUALITY HOME CARE, INC., Petitioner,
v.
ALLIANCE FOR AGING, INC., Respondent.
No. 3D08-2949.
District Court of Appeal of Florida, Third District.
June 17, 2009.
*1150 Squire, Sanders & Dempsey and Teri L. Donaldson and Brian J. Cross (Tallahassee); Radey, Thomas, Yon & Clark and Donna Blanton and Elizabeth McArthur (Tallahassee), for petitioner.
Holland & Knight and Stephen H. Grimes and Karen D. Walker (Tallahassee), for respondent.
Ausley & McMullen and Robert N. Clarke, Jr. and John Beranek (Tallahassee); Mary Ellen McDonald, Department of Elder Affairs (Tallahassee), for State of Florida, as amicus curiae.
Before COPE and LAGOA, JJ., and SCHWARTZ, Senior Judge.
LAGOA, Judge.
First Quality Home Care, Inc. ("First Quality"), seeks a writ of mandamus directing Alliance for Aging, Inc. ("Alliance"), to forward First Quality's notice of bid protest to the Division of Administrative Hearings ("DOAH") for a formal administrative hearing pursuant to Florida's Administrative Procedure Act ("APA"). Because we reject First Quality's contention that Alliance is a state agency subject to the APA, we deny the petition.
Alliance is a private non-profit corporation, which the Department of Elder Affairs ("DOEA"), designated to serve as an area agency on aging ("AAA") "to coordinate and administer the DOEA's programs and to provide, through contracting agencies, services within a planning and service area." § 430.203(1), Fla. Stat. (2008). The contract states that Alliance is an independent contractor and sets forth its obligations including the designation of lead agencies pursuant to requests for proposal for the DOEA's Community Care for the Elderly program in Miami-Dade and Monroe counties.[1]See § 430.203(9), Fla. Stat. (2008).
Alliance issued a request for proposal for three lead agency contracts in Miami-Dade County; the request for proposal provided for an internal appellate process. In response to Alliance's request for proposal, First Quality submitted its proposal. After Alliance issued a notice of intent to award the lead agency designations to other providers, First Quality sent Alliance a letter seeking review of that decision. First Quality's letter purported to serve as its notice of intent to challenge Alliance's selection decision under sections 120.569 and 120.57, Florida Statutes (2008). Alliance set a hearing date before its Board's Executive Committee. First Quality appeared at the hearing, and asserted its *1151 objections to the selection. Alliance's Board rejected First Quality's appeal.
First Quality filed this petition for mandamus, contending, inter alia, that it is entitled to the APA's bid protest procedures rather than the internal appellate procedures provided for in Alliance's request for proposal. In support of this contention, First Quality cites Mae Volen Senior Center, Inc. v. Area Agency on Aging Palm Beach/Treasure Coast, Inc., 978 So.2d 191 (Fla. 4th DCA 2008), review denied, 1 So.3d 172 (Fla.2009). Mae Volen also involved an AAA bid selection process for designation of lead agencies pursuant to a request for proposal, although the request for proposal in Mae Volen expressly provided that the bid protest procedures were governed by section 120.57(3), Florida Statutes. The Fourth District held that the private, non-profit corporation, acting as an AAA, is a state agency subject to the APA and concluded that the DOAH has jurisdiction to hear the appeal of the bid protest for a lead agency contract. We decline to follow the Fourth District, and conclude that Alliance is not a state agency governed by the APA's statutory procedures.
First Quality contends that it is entitled to a formal administrative hearing as provided for in sections 120.569 and 120.57, Florida Statutes (2008). This hearing, however, is afforded to First Quality only if Alliance is an "agency" as defined in section 120.52(1), Florida Statutes (2007),[2] and section 287.012(1), Florida Statutes (2008).[3]See Coastal Fuels Mktg., Inc. v. Canaveral Port Auth., 962 So.2d 942, 944 *1152 (Fla. 5th DCA 2007); Fla. Dep't of Ins. v. Fla. Ass'n of Ins. Agents, 813 So.2d 981, 983 (Fla. 1st DCA 2002); Booker Creek Pres., Inc. v. Pinellas Planning Council, 433 So.2d 1306 (Fla. 2d DCA 1983); see also Sch. Bd. of Palm Beach County v. Survivors Charter Schs., Inc., 3 So.3d 1220, 1230 (Fla.2009) ("The Administrative Procedure Act, set forth in chapter 120, Florida Statutes, is generally applicable to all forms of agency decision making."); Legal Envtl. Assistance Found., Inc. v. Bd. of County Comm'rs, 642 So.2d 1081, 1083 n. 2 (Fla.1994) ("The Administrative Procedure Act applies to all administrative agencies in Florida."). We conclude that Alliance is not an "agency" as defined by either the APA or Florida's procurement statute.
The APA's definition of "agency" is set forth in section 120.52(1), which is divided into several subsections. Alliance does not fall within the definition of "agency" as provided in subsections (a), (b) or (c). First, section 120.52(1)(a), which applies to the Governor's exercise of executive powers other than those derived from the constitution is clearly inapplicable to Alliance. Second, Alliance, a private, non-profit corporation, is not one of the entities listed in subsection (b), i.e., a state department/departmental unit described in section 20.04, Florida Statutes; an authority; a board; a commission; a regional planning agency; a multicounty special district; an educational unit; or an entity described in several listed statutes other than chapter 430, which concerns the DOEA. See Fla. Ass'n of Ins. Agents, 813 So.2d at 983. Finally, Alliance is not a unit of state government that has been made subject to the APA by general or special law or existing judicial decisions as required under subsection (c). See Greene v. Carson, 515 So.2d 1007 (Fla. 1st DCA 1987). We, therefore, conclude that Alliance is not an "agency" as defined by section 120.52(1).
Furthermore, Alliance is not a state "agency" under Florida's procurement statute.[4] Section 120.57(3), Florida Statutes (2008), provides for additional procedures applicable to protests to contract solicitations or awards. Subsection 120.57(3)(g) states that "[f]or the purposes of this subsection, the definitions in s. 287.012 apply." Part I of chapter 287 governs public procurement of contractual services. Section 287.012(1) provides that "agency" "means any of the various state officers, departments, boards, commissions, divisions, bureaus, and councils and any other unit of organization, however designated, of the executive branch of state government." Alliance does not fall within this definition as it is not a listed entity. In addition, Alliance is not "any other unit of organization" because the express language of the statute limits that designation to units of "the executive branch of the state government." Clearly, Alliance  a private corporation  is not a "unit of organization" of the State's executive branch. Accordingly, we hold that Alliance is not a state agency pursuant to the definitions of "agency" as provided in the APA or in the procurement statute.
In Mae Volen, the Fourth District concluded that the AAA fell within section 120.52(1)(b)(3), which lists a "board" as a state agency. We disagree. In reaching this conclusion, Mae Volen relies on section 20.41(7), Florida Statutes (2007). Section 20.41 sets forth the organizational structure of the DOEA, and subsection (7) provides that "[t]he department shall contract with the governing body, hereafter referred to as the `board' of an area agency on aging." Section 20.41(7) merely refers to the governing body of the AAA as *1153 the "board," rather than the entity itself. We believe that the use of the term "board" in section 20.41(7) refers to a "board of directors," and not to an official state board (such as the State Board of Education or the State Board of Governors). Therefore, that nomenclature does not support a holding that the AAA is a "board" as used in the APA definition of "agency." See Coastal Fuels Mktg., Inc., 962 So.2d at 944 (holding that the statutory definition of "agency" as including "each Authority" is inapplicable to the port authority (an independent special taxing district) despite the statutory reference to the governing body of the port authority as an "Authority"); Fla. Ass'n of Ins. Agents, 813 So.2d at 983 (holding that an unincorporated association is not "a `Board' or an `Authority' as those words are used in section 120.52(1), [and stating that] [a]s commonly understood in context, both of those words connote entities different from an unincorporated association"). This conclusion is further supported by subsection 120.52(1)(c)'s reference to "[e]ach other unit of government in the state" (emphasis added), thereby indicating that the previously listed entities in subsection 120.52(1)(b) are also government units. See State ex rel. State Attorney for Twelfth Judicial Circuit v. Gen. Dev. Corp., 448 So.2d 1074, 1082-83 (Fla. 2d DCA 1984) (stating that subsections of 120.52(1) must be read in pari materia), approved, 469 So.2d 1381 (Fla.1985); see also Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1265 (Fla. 2008) (court "cannot read [statutory] subsection... in isolation, but must read it within the context of the entire section in order to ascertain legislative intent for the provision"). Therefore, we hold that Alliance is not a "board" as that term is used in section 120.52(1)(b)(3).
In holding that Alliance is not a state agency, we follow Vey v. Bradford Union Guidance Clinic, Inc., 399 So.2d 1137, 1139 (Fla. 1st DCA 1981), and its conclusion that section 120.52(1)'s definition of "agency" "does not in terms encompass a private entity that contractually agrees to provide services for a state agency." As recognized in Vey, "a private entity which contracted to provide services for a state agency does not thereby become a state agency itself." Id. (citing State Rd. Dep't v. Cone Bros. Contracting Co., 207 So.2d 489 (Fla. 1st DCA 1968)). Mae Volen's attempt to distinguish Vey on the grounds that Vey involved a provider of direct services, while the AAA provides coordination and administration services and, through contracting agencies, services within a planning and service area is unpersuasive. It is of no moment that one private entity provides administration/coordination services while another provides direct services for the care of the elderly. See § 430.203(9), Fla. Stat. (2008) (affording a lead agency authority to coordinate some or all of its services directly or through subcontracts). At bottom, both entities are private, non-profit corporations that provide services pursuant to contracts with state agencies  contracts that describe the entities as independent contractors. We discern no legislative intent to include private, non-profit corporations such as Alliance within the purview of the APA. As stated in Florida Association of Insurance Agents, 813 So.2d at 984:
To conclude that the legislature intended that the Association be subject to the Act would, necessarily, also require the conclusion that many other similar entities are subject to the Act. Had the legislature intended such a result, given the apparently comprehensive nature of the list set out in section 120.52(1), we believe it would have said so.
We similarly conclude that, had the Legislature intended to subject a private corporation *1154 designated as an AAA to the APA's bid protest procedures, it would have included that entity in the pertinent statutes defining "agency." See Vargas v. Enter. Leasing Co., 993 So.2d 614, 618 (Fla. 4th DCA 2008) ("`The starting point for [the] interpretation of a statute is always its language,' so that `courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" (quoting Garcia v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 821, 829-30 (M.D.Fla.2007), aff'd, 540 F.3d 1242 (11th Cir.2008))); Haskins v. City of Ft. Lauderdale, 898 So.2d 1120, 1123 (Fla. 4th DCA 2005) ("A basic canon of statutory interpretation requires us to `presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))). Accordingly, we deny the petition for mandamus. To the extent that this decision conflicts with Mae Volen,[5] we certify conflict.
Petition denied; conflict certified.
COPE and LAGOA, JJ., concur.
SCHWARTZ, Senior Judge (dissenting).
I agree with Mae Volen Senior Center, Inc. v. Area Agency on Aging Palm Beach/Treasure Coast, Inc., 978 So.2d 191 (Fla. 4th DCA 2008), review denied, 1 So.3d 172 (Fla.2009).
NOTES
[1] The record contains the contract between the DOEA and Alliance from July 1, 2008, until June 30, 2009.
[2] Section 120.52(1) states:

As used in this act:
(1) "Agency" means:
(a) The Governor in the exercise of all executive powers other than those derived from the constitution.
(b) Each:
1. State officer and state department, and each departmental unit described in s. 20.04.
2. Authority, including a regional water supply authority.
3. Board, including the Board of Governors of the State University System and a state university board of trustees when acting pursuant to statutory authority derived from the Legislature.
4. Commission, including the Commission on Ethics and the Fish and Wildlife Conservation Commission when acting pursuant to statutory authority derived from the Legislature.
5. Regional planning agency.
6. Multicounty special district with a majority of its governing board comprised of nonelected persons.
7. Educational units.
8. Entity described in chapters 163, 373, 380, and 582 and s. 186.504.
(c) Each other unit of government in the state, including counties and municipalities, to the extent they are expressly made subject to this act by general or special law or existing judicial decisions.
This definition does not include any legal entity or agency created in whole or in part pursuant to chapter 361, part II, any metropolitan planning organization created pursuant to s. 339.175, any separate legal or administrative entity created pursuant to s. 339.175 of which a metropolitan planning organization is a member, an expressway authority pursuant to chapter 348 or transportation authority under chapter 349, any legal or administrative entity created by an interlocal agreement pursuant to s. 163.01(7), unless any party to such agreement is otherwise an agency as defined in this subsection, or any multicounty special district with a majority of its governing board comprised of elected persons; however, this definition shall include a regional water supply authority.
[3] Section 287.012(1) states:

As used in this part, the term:
(1) "Agency" means any of the various state officers, departments, boards, commissions, divisions, bureaus, and councils and any other unit of organization, however designated, of the executive branch of state government. "Agency" does not include the university and college boards of trustees or the state universities and colleges.
[4] Mae Volen does not address this statutory definition of "agency."
[5] The Fourth District expressly stated that its ruling was very narrow: "All we decide is that the administrative hearing officer has jurisdiction to hear this bid protest for a lead agency contract." Mae Volen, 978 So.2d at 195 (emphasis added). In addition, unlike the contract in Mae Volen, the AAA contract describes Alliance as an independent contractor and the request for proposal does not provide for section 120.57(3) procedures.