Justice Scalia,
concurring in part and concurring in the judgment.
I join the opinion of the Court, except for footnote 3, which notes that the legislative history supports what the statute unambiguously says. The Court first notes that statements in the Report of the House Committee on the Judiciary “indicate concern with abusive practices undertaken by attorneys.” Ante, at 236, n. 3. Perhaps, but only the concern of the author of the Report. Such statements tell us nothing about what the statute means, since (1) we do not know that the members of the Committee read the Report, (2) it is almost certain that they did not vote on the Report (that is not the practice), and (3) even if they did read and vote on it, they were not, after all, those who made this law. The statute before us is a law because its text was approved by a majority vote of the House and the Senate, and was signed by the President. Even indulging the extravagant assumption that Members of the House other than members of its Committee on the Judiciary read the Report (and the further extravagant assumption that they agreed with it), the Members of the Senate could not possibly have read it, since it did not exist when the Senate passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. And the President surely had more important things to do.
*254 The footnote’s other source of legislative history is truly mystifying. For the proposition that “the legislative record elsewhere documents misconduct by attorneys” which was presumably the concern of Congress, the Court cites a reproduction of a tasteless advertisement that was (1) an attachment to the written statement of a witness, (2) in a hearing held seven years prior to this statute’s passage, (3) before a Subcommittee of the House considering a different consumer bankruptcy reform bill that never passed.* “Elsewhere” indeed.
The Court acknowledges that nothing can be gained by this superfluous citation (it admits the footnote is “unnecessary in light of the statute’s unambiguous language,” ante, at 236, n. 3). But much can be lost. Our cases have said that legislative history is irrelevant when the statutory text is clear. See, e. g., United States v. Gonzales, 520 U. S. 1, 6 (1997); Connecticut Nat. Bank v. Germain, 503 U. S. 249, 254 (1992). The footnote advises conscientious attorneys that this is not true, and that they must spend time and their clients’ treasure combing the annals of legislative history in all cases: to buttress their case where the statutory text is unambiguously in their favor; and to attack an unambiguous text that is against them. If legislative history is relevant to confirm that a clear text means what it says, it is presumably relevant to show that an apparently clear text does not mean what it seems to say. Even for those who believe in the legal Action that committee reports reflect congressional intent, footnote 3 is a bridge too far.

The Court protests that the earlier hearing was “part of the record cited by the 2005 House Report,” ante, at 236, n. 3. The page it cites, however, does nothing more than note that the earlier hearing took place, see H. R. Rep. No. 109-31, pt. 1, p. 7 (2005). Are we to believe that this brought to the attention of the Committee (much less of the whole Congress) an attachment to the testimony of one of the witnesses at that long-ago hearing? Of course not. That legislative history shows what “Congress” intended is a fiction requiring no support in reality.