Filed 8/14/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EILEEN CONNOR, | B256075 |
| Plaintiff and Appellant, | (Los Angeles County |
| | Super. Ct. No. JCCP4624) |
| v. | |
| | ORDER MODIFYING OPINION |
| FIRST STUDENT, INC., et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:*

It is ordered that the opinion filed herein on August 12, 2015, be modified as follows:

1.  In the caption, Case No. B256077 is deleted.

2.  On page 5, the last sentence of footnote 4 is deleted and replaced with the following:

Therefore, we vacate our order consolidating Gonzalez's appeal with Connor's appeal.  This opinion addresses only First's judgment against Connor.

There is no change in the judgment.

---

*WILLHITE, Acting P.J.  MANELLA, J.  COLLINS, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EILEEN CONNOR, | B256075, B256077 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. JCCP4624) |
| v. | |
| FIRST STUDENT, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, John S. Wiley, Judge. Reversed.

Sundeen Salinas & Pyle, Hunter Pyle, Tanya Tambling; Lewis, Feinberg, Renaker, Lee & Jackson, Todd F. Jackson and Catha Worthman for Plaintiff and Appellant.

Littler Mendelson, Benjamin Emmert and Ronald A. Peters for Defendants and Respondents.

The Investigative Consumer Reporting Agencies Act (ICRAA) (Civ. Code,[1] § 1786 et seq.) and the Consumer Credit Reporting Agencies Act (CCRAA) (§ 1785.1 et seq.) regulate agencies that gather information on consumers to provide to employers, landlords, and others for use by those persons in making employment, rental, and other decisions. The ICRAA governs agencies (and those to whom it provides information) with regard to investigative consumer reports, i.e., reports containing information on a consumer's character, general reputation, personal characteristics, or mode of living. The CCRAA governs agencies (and those to whom it provides information) with regard to consumer credit reports, i.e., reports of information bearing on a consumer's credit worthiness, credit standing, or credit capacity. Both acts impose obligations on the agencies regarding disclosure to consumers when the agencies furnish reports, and limit when and to whom those reports may be furnished. The obligations and limitations, however, are different for each act, as are the remedies for violations of the act; generally, the ICRAA imposes greater obligations and stricter limitations, and allows greater remedies.

This appeal involves investigative consumer reports – background checks – made on employees of defendants First Student, Inc. and First Transit, Inc. (collectively, First) by defendants HireRight Solutions, Inc. and HireRight, Inc.[2] Plaintiff Eileen Connor's lawsuit against First alleging violations of the ICRAA was dismissed after the trial court granted First's motion for summary judgment

---

[1]     Further undesignated statutory references are to the Civil Code.

[2]     HireRight Solutions, Inc. was formerly known as USIS Commercial Services, Inc. In 2009, USIS was rebranded as HireRight Solutions, Inc.; for ease of reference, we refer to USIS, HireRight Solutions, Inc., and HireRight, Inc. collectively as HireRight. All of the background checks at issue in this lawsuit were conducted by one or more of those entities.

based upon the holding of *Ortiz v. Lyon Management Group, Inc.* (2007) 157 Cal.App.4th 604 (*Ortiz*).  In *Ortiz*, the appellate court held that the ICRAA was unconstitutionally vague as applied to tenant screening reports containing unlawful detainer information because unlawful detainer information relates to both creditworthiness and character.  In the *Ortiz* court's view, the ICRAA and the CCRAA present a statutory scheme that requires information in consumer reports to be categorized as *either* character information (governed by the ICRAA) *or* creditworthiness information (governed by the CCRAA); when the information can be categorized as both, the statutory scheme cannot be constitutionally enforced because it does not give adequate notice of which act governs that information.

We disagree with the analysis in *Ortiz*, *supra*, 157 Cal.App.4th 604.  There is nothing in either the ICRAA or the CCRAA that precludes application of *both* acts to information that relates to both character and creditworthiness.  Therefore, we conclude the ICRAA is not unconstitutionally vague as applied to such information.  Accordingly, we reverse the summary judgment.


## BACKGROUND

Because the only issue in this appeal is whether the ICRAA as applied to the background checks conducted on First's employees is unconstitutionally vague, our discussion of the facts is limited to those facts necessary to an understanding of that issue.  Those facts are for the most part undisputed.

Connor worked as a school bus driver.  Before October 2007, when Laidlaw Education Services was acquired by First, Connor worked for Laidlaw; she became an employee of First after the acquisition.

In October 2007, after First acquired Laidlaw, First hired HireRight to conduct background checks on Connor and all other former Laidlaw school bus drivers and aides.  Additional background checks were conducted in 2009 and

3

2010.  As part of the background checks, HireRight provided First with reports that included information from criminal record checks and searches of sex offender registries, as well as the subject's address history, driving records, and employment history.

Before conducting the background checks, First sent to each employee a "Safety Packet."  The Safety Packet was a booklet that included a notice that "an investigative consumer report" may be requested by HireRight.  The notice stated that the report "may include . . . names and dates of previous employers, reason for termination of employment, work experience, accidents, academic history, professional credentials, drugs/alcohol use, information relating to your character, general reputation, educational background, or any other information about you which may reflect upon your potential for employment."  The notice informed the employee that he or she may view the file maintained on him or her, receive a summary of the file by telephone, or obtain a copy of the file.  The notice also included a box the employee could check if he or she wanted to receive a copy of the report.[3]  Finally, the notice included an authorization and release that released First and HireRight from all claims and damages arising out of or relating to the investigation of the employee's background.

In her lawsuit,[4] Connor alleges that the notice did not satisfy the specific requirements of the ICRAA, and that First did not obtain her written authorization.

---

[3]     This check-off box was contained in a section entitled "Notice to California Applicants," which set forth the applicant's rights under the ICRAA, and specifically referred to section 1786.22 of the act.

[4]     Connor is one of more than 1200 plaintiffs in several lawsuits filed against First and HireRight that were coordinated by the Los Angeles Superior Court under rule 3.550 of the California Rules of Court.  The operative complaint for all of the plaintiffs is the Consolidated Fourth Amended Complaint.  Connor and another plaintiff, Jose Gonzalez, were selected as bellwether plaintiffs.  First filed a motion for summary judgment against Connor, and HireRight filed a motion for summary judgment against Gonzalez.  The

First moved for summary judgment on the ground that the ICRAA is unconstitutionally vague as applied to Connor's claims that First violated the statute. In granting the motion based upon *Ortiz, supra*, 157 Cal.App.4th 604, the trial court observed that, notwithstanding the plaintiffs' criticisms of the *Ortiz* court's reasoning, "[a] trial court must accept appellate decisions as they are written." Noting that two federal district courts have followed and extended *Ortiz*, and no court has criticized or departed from it, the trial court concluded that its "job is straightforward: apply *Ortiz*, fully and faithfully." The court dismissed Connor's claims and entered judgment in favor of First. Connor timely filed a notice of appeal from the judgment.

## DISCUSSION

Connor contends that under its plain language, the ICRAA applies to the background checks at issue in this case, and the fact that the CCRAA might also apply to those same background checks does not render the ICRAA void for vagueness. She argues that *Ortiz* was wrongly decided because it failed to consider case law governing the interpretation of overlapping statutes. We agree.

---

motions were heard together, and the trial court granted both on the same ground. Connor and Gonzales each filed a notice of appeal from the judgment entered against him or her, and each appeal was assigned a different case number. We granted the parties' request to consolidate the appeals. Sometime after Connor and Gonzalez filed their joint appellants' opening brief, HireRight filed a petition for bankruptcy, and the appeal was stayed as to HireRight (and Gonzalez, against whom HireRight had obtained the judgment on appeal). Therefore, this opinion addresses only First's judgment against Connor.

A. *The Background Checks Are Subject to the ICRAA Under Its Unambiguous Language*

The ICRAA provides that "[a]n investigative consumer reporting agency" may furnish an "investigative consumer report" to another person only under certain limited circumstances. (§ 1786.12.) It defines the term "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means. The term does not include a consumer report or other compilation of information that is limited to specific factual information relating to a consumer's credit record or manner of obtaining credit obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer." (§ 1786.2, subd. (c).) It defines "investigative consumer reporting agency" as "any person who, for monetary fees or dues, engages in whole or in part in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties," with exceptions not relevant here. (§ 1786.2, subd. (d).)

The ICRAA allows an investigative consumer reporting agency to furnish an investigative consumer report to a person it has reason to believe "[i]ntends to use the information for employment purposes."[5] (§ 1786.12, subd. (d)(1).) However, if the report "is sought for employment purposes other than suspicion of wrongdoing or misconduct by the subject of the investigation, the person seeking

---

[5] The ICRAA defines the term "employment purposes" when used in connection with an investigative consumer report as "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment, or retention as an employee." (§ 1786.2, subd. (f).)

6

the investigative consumer report may procure the report, or cause the report to be made, only if . . . [¶] [t]he person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of [certain specified disclosures] . . . [¶] [and] [t]he consumer has authorized in writing the procurement of the report." (§ 1786.16, subd. (a)(2).) In addition, the person procuring or causing the report to be made must "certify to the investigative consumer reporting agency that the person has made the applicable disclosures to the consumer required by [§ 1786.16, subd. (a)] and that the person will comply with subdivision (b)." (§ 1786.16, subd. (a)(4).) Subdivision (b) of section 1786.16 requires the person procuring or causing the report to be made to (1) provide the consumer a form with a box that can be checked if the consumer wishes to receive a copy of the report, and send a copy of the report to the consumer within three business days if the box is checked; and (2) comply with section 1786.40 if the person procuring or causing the report to be made contemplates taking adverse action against the consumer. (§ 1786.16, subd. (b).) Section 1786.40 requires the user of an investigative consumer report who takes an adverse employment action against the consumer as a result of the report to so advise the consumer and supply the name and address of the investigative consumer reporting agency that furnished the report.

In this case, First admits that the background checks it requested HireRight to prepare included reports containing information regarding the subject's criminal records, sex offender status, address history, driving records, and employment history. First also admits that those background checks were used to confirm that Connor and the other employees "are properly qualified to safely perform their job duties."

7

There is no question that the background checks included information on the employees' (or prospective employees') "character, general reputation, personal characteristics, or mode of living," and thus were investigative consumer reports under section 1786.2, subdivision (c). Nor is there any question that the investigative consumer reports were used for employment purposes, as defined in section 1786.2, subdivision (f). Therefore, under the plain statutory language, HireRight, as an investigative consumer reporting agency, and First, as a person who procured or caused the investigative consumer reports to be made, were required to comply with the applicable provisions of the ICRAA.

B. *The Possible Applicability of the CCRAA Does Not Render the ICRAA Unconstitutionally Vague*

Despite the unambiguous language of the ICRAA, First argues the act is unconstitutionally vague because (1) the CCRAA also applies to the background checks at issue, and a person of ordinary intelligence cannot determine whether the CCRAA or the ICRAA applies, and (2) it potentially makes a defendant liable even though the conduct at issue "is specifically authorized by the CCRAA." There are two problems with these arguments.

Initially, it is not entirely clear that the CCRAA applies to the background checks at issue here. The CCRAA applies to "consumer credit reports," which the act defines as "any written, oral, or other communication of any information by a consumer credit reporting agency *bearing on a consumer's credit worthiness, credit standing, or credit capacity*, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit, as defined in subdivision (c) of Section 1940, or (4) other purposes authorized

8

in Section 1785.11." (§ 1785.3, subd. (c), italics added.)  The definition specifically excludes "any report containing information solely on a consumer's character, general reputation, personal characteristics, or mode of living which is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning those items of information." (*Ibid.*)

Although First produced undisputed evidence that the background checks at issue did not contain any character information obtained through personal interviews (which would have made them subject to the CCRAA exclusion),  there is no evidence that the background checks sought or included information bearing on the subjects' credit worthiness, credit standing, or credit capacity.  Indeed, the notice First sent to the subjects of the background checks referred to the checks as "investigative consumer reports" – *not* consumer credit reports – and listed the kind of information sought, which did not specifically include credit information (although it did include "any other information about you which may reflect upon your potential for employment").

Second, even if we assume the CCRAA applied to the background checks, First's vagueness arguments  are based upon the faulty premises that (1) any given consumer report must be governed by either the CCRAA or the ICRAA, but not both, and (2) the CCRAA "authorizes" certain conduct.

> 1. *Neither the Language Nor the History of the CCRAA and the ICRAA Support First's Argument, and the* Ortiz *Court's Conclusion, That a Consumer Report Could Not be Subject to Both Acts As Currently Written*

First's first vagueness argument closely follows the analysis by the appellate court in *Ortiz, supra*, 157 Cal.App.4th 604.  In *Ortiz*, the plaintiff applied to rent an

apartment managed by the defendant. The plaintiff gave written consent to the defendant to obtain a tenant screening report, which specifically included "an 'unlawful detainer (eviction) search.'" (*Id.* at p. 611.) Although that search indicated that no such actions had been filed against the plaintiff, and the plaintiff's application was approved, the plaintiff nevertheless filed a lawsuit against the defendant alleging that the defendant violated the ICRAA because the results of the unlawful detainer search constituted character information and the defendant failed to give her a written notice and form with a check box to request the report. (*Ibid.*) The trial court granted the defendant's summary judgment motion, finding that the tenant screening report contained no character information subject to the ICRAA. The court noted that there were no unlawful detainer actions listed in the report, but it found that even if there had been unlawful detainer information, that would not prove that plaintiff had a bad character. The trial court also held that the plaintiff's broad reading of the ICRAA would render the act unconstitutionally vague and inconsistent with federal law. (*Id.* at p. 612.)

In its opinion affirming the judgment, the appellate court viewed the issue before it as "a categorization challenge." (*Ortiz*, *supra*, 157 Cal.App.4th at p. 612.) It noted that "[w]hether an unlawful detainer action has been filed against a consumer appears to speak to both creditworthiness and character." (*Ibid.*) It explained that the categorization challenge "arises not because unlawful detainer information is somehow paradoxical, but because the statutory scheme fails to set forth truly distinct categories. It presents a false dichotomy between creditworthiness and character." (*Id.* at pp. 612-613.)

The *Ortiz* court's analysis (like First's) is premised upon its determination that a consumer report cannot be subject to both the ICRAA and the CCRAA. The *Ortiz* court did not point to any language in either act that precludes the application

10

of both to the same consumer report. Instead, the court (like First) relied upon the history of the acts to support its determination.

As the *Ortiz* court noted, the CCRAA and the ICRAA were enacted in 1975, and were modeled after the federal Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1680 et seq.). (*Ortiz*, *supra*, 157 Cal.App.4th at p. 613.) Unlike the FCRA – which governs all consumer reports, regardless whether the reports contain only credit worthiness information, only character information, or both (although it treats differently reports that contain character information that was obtained from personal interviews) – the California Legislature created two separate statutory schemes, one governing consumer credit reports (the CCRAA) and the other governing investigative consumer reports (the ICRAA). As originally enacted, the scope of the ICRAA was limited to consumer reports containing character information when that information was obtained from personal interviews, and the CCRAA specifically excluded such reports from its scope; the ICRAA, in turn, specifically excluded reports that included only credit information.[6] (*Ortiz*, *supra*, 157 Cal.App.4th at pp. 613-616.)

---

[6] In the original enactment in 1975, the ICRAA defined the term "investigative consumer report" as "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning any such items of information. Such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer." (Former § 1786.2, subd. (c), added by Stats. 1975, ch. 1272, p. 3378.) The definition of the term "consumer credit report" in the 1975 version of the CCRAA provided that "[t]he term does not include: . . . (4) any report containing information solely on a consumer's character, general reputation, personal characteristics, or mode of living which is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning any such items of information." (Former § 1785.3, subd. (c), added by Stats. 1975, ch. 1271, pp. 3369-3370.)

11

The *Ortiz* court pointed to this history to confirm its conclusion that, by enacting "two separate statutes governing two kinds of [consumer reports] depending on the type of information they contain . . . [the Legislature] inten[ded] to distinguish between creditworthiness information and character information." (*Ortiz*, *supra*, 157 Cal.App.4th at p. 614.) From this, the court reasoned that any one item of information must be classified as *either* creditworthiness *or* character information, but not both, because a single report could be governed by *either* the CCRAA *or* the ICRAA, but not both. (*Ortiz*, *supra*, 157 Cal.App.4th at pp. 614-616.) But the history does not, in fact, support the court's conclusion.

The *Ortiz* court and First are correct that under the CCRAA and the ICRAA as originally enacted, a consumer report could not be governed by both the CCRAA and the ICRAA. But the reason for that was not because information could not be classified as both creditworthiness information and character information. It was because the ICRAA governed only those consumer reports that included character information *obtained through personal interviews*, and the CCRAA expressly excluded such reports. But it is clear that the CCRAA always governed consumer reports that included character information, as long as that information was not obtained through personal interviews. For example, the CCRAA has always included provisions that limited the inclusion of information regarding criminal records that antedated the report by more than seven years. (See former § 1785.13, subd. (a)(6), added by Stats. 1975, ch. 1271, p. 3372.) Similarly, it has always imposed certain requirements when a credit report contained information from public records that were likely to have an adverse effect on a consumer's ability to obtain employment, and expressly referred to public records "relating to arrests, indictments, [and] convictions." (See former § 1785.18, subd. (b), added by Stats. 1975, ch. 1271, p. 3375.)

12

When the Legislature amended the IRCAA in 1998 to remove the limitation on the scope of the IRCAA so it would govern all consumer reports that include character information, no matter how that information is obtained, it did not amend the CCRAA to exclude from its scope reports that include character information obtained from sources other than personal interviews. Thus, after the amendment, consumer reports that include character information obtained from a source other than personal interviews continue to be governed by the CCRAA, as long as the reports contain information "bearing on a consumer's credit worthiness, credit standing, or credit capacity." (§ 1785.3, subd. (c).) But they *also* are governed by the ICRAA under its clear and unambiguous language.

The *Ortiz* court's statement (upon which First relies) that a consumer report cannot be subject to both acts (*Ortiz*, *supra*, 157 Cal.App.4th at p. 617) simply is not supported by the language of the acts as now amended. "'"'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]'"' In determining such intent, the court turns first to the words of the statute. "[W]here . . . the language is clear, there can be no room for interpretation.'" [Citation.]" (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 121; see also *Connecticut Nat. Bank v. Germain* (1992) 503 U.S. 249, 253-254 ["courts must presume that a legislature says in a statute what it means and means in a statute what it says there"].) And when "'"the terms of a statue are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.'" (*San Francisco Unified School Dist. v. Johnson* (1971) 3 Cal.3d 937, 948.) The fact that the two acts overlap in their coverage of some consumer reports does not render the acts unconstitutionally vague to the extent of that overlap. "Redundancies across statutes are not unusual events in drafting, and so

13

long as there is no 'positive repugnancy' between the two laws, [citation], a court must give effect to both." (*Connecticut Nat. Bank v. Germain*, *supra*, 503 U.S. at p. 253.) As the Supreme Court observed in a case in which the defendant argued that the Court should not give effect to two patent laws, each with different requirements and protections, that protect the same thing, "'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.' . . . [¶] [T]his Court has not hesitated to give effect to two statutes that overlap, so long as each reaches some distinct cases." (*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.* (2001) 534 U.S. 124, 143-144.)

In the present case, there is no "positive repugnancy" between the CCRAA and the ICRAA. An agency that furnishes a report containing both creditworthiness information and character information, and the person who procures or causes that report to be made, can comply with each act without violating the other. And despite the overlap between the CCRAA and the ICRAA after the 1998 amendment, there remain certain consumer reports that are governed exclusively by the ICRAA (those with character information obtained from personal interviews) or by the CCRAA (those that include only specific credit information), because each act expressly excludes those specific reports governed by the other act. (See §§ 1785.3, subd. (c)(5) [excluding from the CCRAA "any report containing information solely on a consumer's character, general reputation, personal characteristics, or mode of living which is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on, or others with whom he is acquainted or who may have knowledge concerning those items of information"]; 1786.2, subd. (c) [excluding from the ICRAA "a consumer report or other compilation of information that is limited to specific factual information relating to a consumer's credit record or manner of obtaining credit

14

obtained directly from a creditor of the consumer or from a consumer reporting agency when that information was obtained directly from a potential or existing creditor of the consumer or from the consumer"].)  Therefore, we can – and must – give effect to both acts.  By doing so, the constitutional vagueness issue identified by *Ortiz*, *supra*, 157 Cal.App.4th 604, and relied upon by First, disappears because there is no question that the information First requested in the background checks included information on the employees' character, general reputation, personal characteristics, or mode of living, that is, information covered by the plain language of the ICRAA.

2.      *First's Conduct Was Not "Specifically Authorized" by the CCRAA*

First's argument that the ICRAA is unconstitutionally vague as applied to this case because it could hold First liable for violating its provisions even though the conduct at issue "is specifically authorized by the CCRAA" rests on another faulty premise.  The CCRAA does not "specifically authorize" anything.  Rather, it imposes obligations upon consumer credit reporting agencies and users of consumer reports to the extent those reports include information bearing on a consumer's creditworthiness, credit standing, or credit capacity and are used as a factor in establishing the consumer's eligibility for credit, employment purposes, or hiring of a dwelling unit.  By complying with those obligations, a consumer credit reporting agency or user of those consumer reports cannot be held liable *under the CCRAA* for actual or punitive damages suffered by the consumer.  But compliance with the CCRAA does not absolve a user of a consumer report that includes the consumer's character information from liability if the user does not also comply with the obligations imposed by the ICRAA.

In short, to the extent the background checks at issue included information related to employees' character, First was required to comply with the

15

requirements set forth in the ICRAA, regardless whether First complied with the CCRAA.

## DISPOSITION

The judgment is reversed. Connor shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P.J.


We concur:



MANELLA, J.



COLLINS, J.