# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-527


STATE OF LOUISIANA

VERSUS

**DWAYNE ANTHONY SYLVESTER, SR.,
AKA DEWAYNE SYLVESTER**


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 10402-17
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## CANDYCE G. PERRET
## JUDGE

**********

Court composed of John E. Conery, Van H. Kyzar, and Candyce G. Perret, Judges.


**HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED;
REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS
OPINION.**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**Post Office Box 52988**
**Shreveport, LA 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Dwayne Anthony Sylvester, Sr., (AKA Dewayne Sylvester)

**Dwayne Anthony Sylvester**
**Allen Correctional Center**
**3751 Lauderdale Woodyard Road**
**Kinder, LA   70648**
**IN PROPER PERSON**

**John F. DeRosier**
**District Attorney**
**Hope W. Buford**
**Assistant District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Post Office Box 3206**
**Lake Charles, LA  70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**John E. Turner**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA   70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRET, Judge.**

Defendant, Dwayne Anthony Sylvester, Sr. (also known as Dewayne Sylvester), is before this court appealing his sentence as a third habitual offender. On appeal, we vacate Defendant's habitual offender adjudication and sentence and remand for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY:**

In a previous appeal, this court affirmed Defendant's attempted second degree murder conviction and sentence of fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. *State v. Sylvester*, 18-144 (La.App. 3 Cir. 9/26/18) (unpublished opinion), *writ denied*, 18-1742 (La. 4/8/19), 267 So.3d 606.[1] The court detailed the facts as follows:

> On February 18, 2016, Defendant, Shirley Manuel, and a child were traveling to Lake Charles from Lafayette and stopped at a video poker casino to use the restroom. After parking the car, they were approached by Gerald Carter, the victim, claiming that Defendant and Ms. Manuel were following him. Mr. Carter then went inside the casino. When Ms. Manuel returned from the restroom, Defendant entered the casino. Inside the casino, he approached Mr. Carter, the two began arguing, and both Defendant and Mr. Carter exited the casino. When Mr. Carter swung a beer can at him, Defendant stabbed him twice with a box cutter. Mr. Carter was injured as a result, and Defendant was arrested and charged with the attempted murder of Mr. Carter.
>
> Defendant was formally charged by indictment filed on March 31, 2016, with one count of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1. At trial, on April 26, 2017, the jury found Defendant guilty as charged.
>
> On May 22, 2017, Defendant filed a motion for a new trial, which was denied. Defendant was then sentenced to fifteen years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, for one count of attempted second degree murder. Defendant filed a pro se motion to reconsider sentence on

---

[1]The record in Defendant's original appeal is an exhibit to the current appeal.

July 11, 2017, which was subsequently denied based on its untimeliness.

The State then filed a habitual offender bill of information charging Defendant as a second and subsequent felony offender. Defendant entered a plea of not guilty to the habitual offender bill at the May 22, 2017 hearing.[2] The habitual offender hearing is set for October 17, 2018.

*Sylvester*, 18-144, p. 1.

On October 17, 2018, the trial court found Defendant to be a third habitual offender, vacated the previously imposed sentence for attempted second degree murder, and sentenced Defendant to forty years, to be served "without benefit."[3] Defense counsel objected to the sentence imposed.

On October 29, 2018, Defendant filed a pro se Motion to Reconsider Sentence that was denied by the trial court on November 13, 2018. Thereafter, on December 10, 2018, Defendant filed a pro se motion to appeal his habitual offender sentence and the trial court's denial of his motion to reconsider sentence. On December 13, 2018, the trial court denied Defendant's motion to appeal his habitual offender sentence as being untimely but granted Defendant's motion to appeal the denial of his motion to reconsider sentence.

Pursuant to a writ application filed by Defendant, this court ordered the trial court to grant Defendant's appeal of his habitual offender adjudication. *State v. Sylvester*, 19-57 (La.App. 3 Cir. 3/14/19) (unpublished opinion). In accordance

---

[2] We note that the heading of the habitual offender bill, which was filed on May 22, 2017, states Defendant was being charged as a "Second and Subsequent Habitual Offender 15:529.1." In the body of the habitual offender bill, however, the State prayed that Defendant be sentenced as a "Third Habitual Offender, in accordance with LSA-R.S. 15:529.1A(3)(a), in violation of LSA-R.S. 15:529.1A(3)(a)." At the habitual offender hearing, the State informed the trial court that it was seeking to have Defendant sentenced as a third habitual offender, and the trial court found Defendant to be a third habitual offender.

[3] The previously imposed sentence was fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. *Sylvester*, 18-144, p. 1.

2

with this court's ruling, on March 15, 2019, the trial court granted Defendant's appeal of his habitual offender sentence. Defendant now appeals through counsel, alleging that Defendant's habitual offender sentence is excessive, and appeals pro se, alleging various errors regarding his habitual offender adjudication and sentence. However, this court finds two errors patent that require Defendant's habitual offender adjudication and sentence to be vacated and the matter remanded for further proceedings. Consequently, the assignments of error raised in both appellate counsel's brief and in Defendant's pro se brief are pretermitted.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are errors patent necessitating Defendant's habitual offender adjudication and sentence be vacated and the case remanded for further proceedings consistent with this court's opinion.

This court finds that the wrong cleansing period was applied to Defendant's predicate convictions. At the habitual offender hearing, the State informed the trial court that the ten-year cleansing period applied to Defendant's predicate convictions. However, as will be discussed, the five-year cleansing period should have been applied to Defendant's predicate convictions. In *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, *cert. denied*, ___ U.S. ___, 138 S.Ct. 1175 (2018), the supreme court recognized as an error patent the State's failure to prove beyond a reasonable doubt that the cleansing period had not lapsed. Thus, we have reviewed, as error patent, the cleansing period applied in the present case.

In determining the correct cleansing period to be applied in this case, the Louisiana Supreme Court's recent decision in *State v. Lyles*, 19-203 (La.

3

10/22/19), __ So.3d __ is pertinent. On October 22, 2019, the supreme court rendered the following per curiam opinion in *Lyles*, a case in which the legality of the habitual offender sentence was raised:

> We granted the application to determine whether defendant's habitual offender status and sentence are governed by La.R.S. 15:529.1 as it existed at the time of the commission of the crime, as it was amended by 2017 La. Acts [No.] 282, or as it was amended by 2018 La. Acts [No.] 542. Finding Act 282 applies, we reverse the court of appeal, vacate the habitual offender adjudication and sentence, and remand with instructions to the district court for further proceedings.

> On November 11, 2016, a St. John the Baptist Parish jury found defendant guilty of an aggravated battery, La.R.S. 14:34, he committed on February 1, 2015. On November 16, 2016, the State filed a habitual offender bill of information alleging two predicate offenses—a 1991 distribution of cocaine conviction and a 2004 manslaughter conviction. On February 13, 2017, the district court adjudicated defendant a third-felony offender and sentenced him to the life sentence mandated by La.R.S. 15:529.1(A)(3)(b) (effective August 15, 2010). The court of appeal vacated the habitual offender sentence and remanded for resentencing because of the trial court's failure to vacate the underlying aggravated battery sentence. *State v. Lyles*, 17-0405 (La. App. 5 Cir. 2/21/18), 239 So.3d 1055. After remand, the district court resentenced defendant on March 12, 2018, to the same term of imprisonment under the same provision of law. Defendant appealed.

> On appeal, defendant contended that the Habitual Offender law, as amended by 2017 La. Acts 282, should be applied to him. Among other changes, this act reduced from ten to five years the time allowed—commonly known as the cleansing period—between expiration of correctional supervision for one offense and commission of the next offense on the habitual offender ladder.[1] Defendant's probation for distribution of cocaine expired in 1996 and he did not commit manslaughter until 2003. Therefore, defendant contended he was a second-felony offender subject to a sentencing range of 3 1/3 to 20 years imprisonment under the amended law.

> Defendant relied on Section 2 of Act 282, which provides, "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." The State, however, relied on a subsequent amendment to the Habitual Offender Law in 2018 La. Acts [No.] 542 to argue that the district court applied the correct version of the Habitual Offender Law (i.e., the one in effect when

4

defendant committed the crime in 2015). According to the State, despite the language of Act 282, the legislature subsequently clarified its intent with Act 542, which added La.R.S. 15:529.1(K).

The court of appeal agreed with the State, and found the district court sentenced defendant under the correct version of the Habitual Offender Law:

> Upon review, we rely on the well settled jurisprudence that the law in effect at the time of the offense is determinative of a defendant's punishment, including for habitual offender proceedings. [*State v. Parker*, 03-0924 (La. 4/14/04), 871 So.2d 317; *State v. Sugasti*, 01-3407 (La. 06/21/02), 820 So.2d 518; *State v. Williams*, 03-0571 (La. App. 5 Cir. 11/12/03), 862 So.2d 108.] Further, we find that by enacting subsection K, the legislature clarified its original intent that the date of commission of the underlying offense be used to determine the sentencing provision applicable to a habitual offender, except as otherwise explicitly provided in the statute. Therefore, after review, we find that the Habitual Offender Law in effect at the time of the commission of defendant's underlying offense of aggravated battery should be applied in determining defendant's habitual offender sentence, and the trial court did so correctly when imposing defendant's enhanced sentence of life imprisonment without benefits.

> ....

> Accordingly, we find that the 2015 version of La. R.S. 15:529.1(A)(3)(b) is the sentencing provision applicable to defendant herein because his third felony (the aggravated battery conviction) and his predicate conviction of manslaughter are crimes of violence under La. R.S. 14:2(B)(5) and La. R.S. 14:2(B)(4), respectively. Additionally, defendant's 1991 conviction for distribution of cocaine in violation of La. R.S. 40:967(A) was a violation of the Uniform Controlled Dangerous Substance Law punishable by ten years of imprisonment or more. La. R.S. 40:967(B)(4). Under the habitual offender statute as it existed at the time of the commission of the underlying offense of aggravated battery, defendant was subject to an enhanced mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. *See* La. R.S. 15:529.1(A)(3)(b). For the foregoing reasons, we find that the trial court correctly applied the Habitual Offender Law in effect in 2015 in sentencing defendant.

*State v. Lyles*, 18-0283, pp. 9–10 (La. App. 5 Cir. 12/27/18), 263 So.3d 930, 938–939.

The question presented is one of statutory interpretation, which begins "as [it] must, with the language of the statute." *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). "Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning." *State v. Oliphant*, 12-1176, p. 5 (La. 3/19/13), 113 So.3d 165, 168; *see also Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("In any event, canons of construction are no more than rules of thumb to help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' ") (citations omitted).

As noted above, the relevant portion of Act 282 provides: "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." 2017 La. Acts [No.] 282, § 2. By contrast, Act 542 added new Subsection (K) to R.S. 15:529.1:

K. (1) Except as provided in Paragraph (2) of this Subsection, notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed.

(2) The provisions of Subsection C of this Section as amended by Act Nos. 257 and 282 of the 2017 Regular Session of the Legislature, which provides for the amount of time that must elapse between the current and prior offense for the provisions of this Section to apply, shall apply to any bill of information filed pursuant to the provisions of this Section on or after November 1, 2017, accusing the person of a previous conviction.

2018 La. Acts [No.] 542, § 1 (effective August 1, 2018).

We note at the outset, from the plain language of these provisions in conjunction with the effective dates of the acts, the legislature appears to have created three categories of persons potentially affected by these provisions:

1.    There are persons—like the present defendant—whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date. Those defendants would be eligible to receive the benefits of all ameliorative changes made by Act 282.

2.    There are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed between that date and August 1, 2018 (the effective date of Act 542). Those persons would be eligible to receive the benefit of the reduced cleansing period,[2] and they may also have colorable claims to the other ameliorative changes provided in Act 282, although we need not decide that question today.

3.    Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

The State urges, and the court of appeal found, essentially, that the legislature intended what it wrote in Act 542 but did not intend what it wrote in Act 282, and therefore Act 542 should be applied because it "clarifies" Act 282. However, the language indicating that Act 282 "shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017" is quite clear. Therefore, we must presume the legislature meant what it said, and the judicial inquiry ends there.

The State, however, attempts to breathe ambiguity into this language by questioning when a conviction becomes final. That question is readily answered by Code of Criminal Procedures articles 914 and 922, and the State's desire that finality be determined differently for purposes of the Habitual Offender Law than in other contexts does not suffice to introduce ambiguity into the clear language the legislature chose.[3]

We find that 2017 La. Acts [No.] 282, § 2, which provides that Act 282 "shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017" is unequivocal, and therefore not

subject to further judicial construction. For persons like defendant, whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed before that date, the full provisions of Act 282 apply. Accordingly, we find defendant was adjudicated and sentenced pursuant to the wrong version of the Habitual Offender Law. We reverse the court of appeal, vacate the habitual offender adjudication and sentence, and remand for further proceedings. On remand, the district court is directed to apply the version of the Habitual Offender Law, La.R.S. 15:529.1, as it was amended by 2017 La. Acts. [No.] 282, and before its amendment by 2018 La. Acts [No.] 542.

**REVERSED, HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED, AND REMANDED WITH INSTRUCTIONS**

_____

[1]In addition to the reduction from ten to five years, the court of appeal noted that Act 282 also removed persons with a current or prior felony that was a violation of the Uniform Controlled Dangerous Substance Law punishable for ten or more years from the group of persons subject to a life sentence as a third felony offender. *State v. Lyles*, 18-0283, pp. 4 (La. App. 5 Cir. 12/27/18), 263 So.3d 930, 935. Furthermore, Act 282 significantly reduced the sentencing ranges at each rung of the habitual offender ladder.

[2]Notably, such a person would receive the reduced cleansing period regardless of whether Act 282 or Act 542 is applied.

[3]The State cites La.C.Cr.P. art. 934(3) for the proposition that "[c]onvicted means adjudicated guilty after a plea or after trial on the merits," and the State contends that this convicted status equals finality, at least for the purposes of the Habitual Offender Law. But had the legislature wished to craft Act 282 to reach convictions occurring after November 1, 2017, it could have easily done so by stating that Act 282 would become effective and have prospective application only to offenders "convicted on or after" that date. We further note that the text of the Habitual Offender Law has made no mention of finality from its inception until the adoption of Act 282.

In the current case, Defendant falls within the first category discussed in *Lyles* because his conviction is not yet final, and his habitual offender bill was filed May 22, 2017. Thus, according to *Lyles*, Defendant receives all the ameliorative changes made by 2017 La. Acts No. 282. These changes include a reduction in sentencing exposure as well as a reduction in the applicable cleansing period. The legislature reduced the cleansing period from ten years to five years for predicate offenses that are non-violent and non-sex-offenses. Although Defendant's current

offense (attempted second degree murder) is a violent offense, Defendant's predicate offenses (both possession of controlled dangerous substances) are neither violent offenses nor sex offenses. Thus, the five-year cleansing period applies to Defendant's predicate offenses.

It is clear in the present case, however, that the parties believed the ten-year cleansing period applied to Defendant's predicate convictions. Specifically, the State explained to the trial court: "Also, Judge, as far as 18 years being a long time, it's a ten-year cleansing period. Mr. Sylvester did not make those ten years - - 2000, 2007, and then again in 2016." Moreover, the State failed to prove beyond a reasonable doubt that at least one of Defendant's predicate convictions was not cleansed by the five-year cleansing period. As amended by 2017 La. Acts No. 282, La.R.S. 15:529.1(C)(1) (emphasis added) provides:

> Except as provided in Paragraph (2) of this Subsection, **the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed between the date of the commission of the current offense or offenses and the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for the previous conviction or convictions,** or between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided in this Paragraph, **any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of the five-year periods between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, and the next succeeding offense or offenses**.

According to the habitual offender bill, Defendant was convicted of his first predicate convictions (two counts of Possession of CDS II) on April 3, 2000. The habitual offender bill further states that Defendant was sentenced on that same date

9

to three years at hard labor on each count, to run concurrently. According to the habitual offender bill, Defendant subsequently committed possession of CDS III on November 17, 2005. For that offense, the habitual offender bill states that Defendant was convicted on October 15, 2007, and sentenced on that same date to one year in parish jail. Defendant then committed the current offense on February 18, 2016.

Thus, the State failed to prove that the five-year cleansing period did not lapse between Defendant's October 15, 2007 conviction for possession of CDS III and the commission of Defendant's current offense on February 18, 2016. The latest Defendant could have been released from correctional supervision was October 15, 2008. Since Defendant's current offense was committed on February 18, 2016, the State failed to prove the five-year cleansing period did not lapse. Accordingly, Defendant's habitual offender adjudication and sentence is vacated and the case remanded for further proceedings.

As a second error patent, we note that the trial court applied the wrong penalty provision in sentencing Defendant. As previously stated, all the 2017 ameliorative changes apply to Defendant. *See Lyles*, __ So.3d at __. The trial court found that for his current conviction of attempted second degree murder, Defendant was a third habitual offender. In accordance with the 2017 ameliorative changes, the following habitual offender penalty provision applies to third habitual offenders:

> 3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:
>
> (a) The person shall be sentenced to imprisonment for a determinate term not less than one-half of the longest possible

10

sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.

La.R.S. 15:529.1(A).

The third felony in this case was attempted second degree murder. The penalty range for that offense is the following:

> (D)(1)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.

La.R.S. 14:27.

Considering the penalty provision for attempted second degree murder and the 2017 penalty provision for a third habitual offender, the penalty range that should have been applicable to Defendant is twenty-five to 100 years. The trial court, however, found the penalty range was thirty-three to 100 years, which is provided by the habitual offender provision that was in effect at the time Defendant committed the third felony (February 18, 2016).[4]

However, because we vacate the habitual offender adjudication, we also vacate Defendant's sentence. Therefore, this error patent is moot.

**ASSIGNMENTS OF ERROR:**

On appeal, Defendant's appellate counsel contends that the trial court imposed an excessive sentence, while Defendant's pro se brief alleges various errors as to his habitual offender adjudication and sentence. These assignments of error are pretermitted by the errors patent discussed above.

---

[4]At that time, the habitual offender penalty range for a third habitual offender was not less than two-thirds the longest possible sentence and not more than twice the longest possible sentence.

**DECREE:**

Considering the foregoing errors patent, Defendant's habitual offender adjudication and sentence are vacated and the case is remanded for further proceedings consistent with this opinion.

**HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**